## Case No. 15,795.

### UNITED STATES v. The MOLLIE.

### UNITED STATES v. The BONITA.

[2 Woods, 318.] [1]

Circuit Court, E. D. Texas.    May Term, 1876.

SHIPPING—STEAM INSPECTION LAWS—PRACTICE IN ADMIRALTY—DECREE—DEFAULT.

1. Where a seizure is made on water and the proceeding is consequently in admiralty, and there is default, the court should use a wise discretion whether to require proofs or not.

2. In all such cases, proclamation to appear should be made and a decree entered for default and contumacy. and upon reading the libel and proceedings thereon, and with or without proof as the court may direct, such decree should be made as the nature of the case may require.

3. A small pleasure boat twenty-nine feet long and seven feet wide, without deck, propelled by a small steam engine with a cylinder of nine inches stroke and three and one-half inches diameter, run occasionally by its owners for amusement upon Buffalo Bayou below Houston, Texas, is not a vessel navigating the public waters of the United States within the meaning of the steam inspection laws.

[Cited in Hartrauft v. Du Pont, 118 U. S. 227, 6 Sup. Ct. 1188.]

[Appeal from the district court of the United States for the Eastern district of Texas.]

This was a libel filed in the district court for penalties for nonobservance of the steamboat inspection law. No party appearing to claim the vessel, the district court, on examining a witness as to its character, dismis-

---

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

sed the libel [case unreported], and the United States attorney appealed. No person yet appearing, the question arose as to the method of proceeding, namely, whether a decree of condemnation ought to be entered as of course for the default, or whether the United States attorney ought to prove the allegations of the libel.

BRADLEY, Circuit Justice. The steamboat inspection law does not prescribe the method of recovering the penalties therein imposed; but as the libel in this case was for penalties for which the vessel is made liable, and subject to seizure, the mode of proceeding will be regarded as to be governed by the general act, section 925 Rev. St., which is based upon the eighty-ninth section of the revenue collection act of 1799 [1 Stat. 695]. By this act, "if no person appears and claims such vessel, goods, etc., and gives bond to defend the prosecution thereof, and to respond the cost, in case he shall not support his claim, the court shall proceed to hear and determine the cause according to law."

What is meant by hearing and determining according to law, is the point to be ascertained. The phrase has met with some judicial exposition; and it seems to be settled that the mode of hearing depends on the practice of the court in which the proceeding is conducted. If it is a court of common law, or if the proceeding is according to the course of the common law, the practice is one thing; if it is a court of admiralty, proceeding in due course of admiralty, it is another thing. On seizures for condemnation and forfeiture at common law, an information is filed, setting forth the offense and the ground of seizure, and praying the relief desired. This is the course on seizure made upon land. In this proceeding, proclamation is made on the return of the writ, and if default be made, a judgment of condemnation by default is entered, and an order of sale of the thing condemned. This is the course of proceeding in the court of exchequer in England. A complete record in such a case may be found in Parker, Exch. 57, in the case of Attorney General v. Lade, referred to in Miller v. U. S., 11 Wall. [78 U. S.] 303, where this method of entering judgment is approved.

But if the seizure is made on water, and the proceeding is in admiralty, there is some difference of opinion as to the practice to be pursued. Some authorities state that a final decree will be made on the default; others, that proofs must be made of the allegations of the libel. The twenty-ninth rule in admiralty, as prescribed by the supreme court of the United States, directs that "if the defendant shall omit or refuse to make due answer to the libel upon the return day of the process, or other day assigned by the court, the court shall pronounce him to be in contumacy and default; and thereupon the libel shall be adjudged to be taken pro confesso against him, and the court shall pro-

ceed to hear the cause ex parte, and adjudge therein as to law and justice shall appertain." The method here prescribed—"proceeding to hear the cause ex parte"—would seem to require something more than a mere entry of a decree. Conkling, in his treatise on United States Courts (part 3, p. 568, c. 3, § 3), says, that in the district courts of New York, on the return day of the warrant of arrest, or some subsequent day of the term, the district attorney reads the libel or information, or so much thereof as is necessary to show what property it is that is proceeded against, by whom the seizure was made, and the grounds of seizure. He thereupon moves that the usual proclamation be made; and the crier accordingly makes one proclamation to the purport, that if any one can aught say why the property mentioned in the libel or information should not be condemned as forfeited to the United States, he may come forth and shall be heard. If no claimant appears the district attorney moves for a decree of condemnation, and that the property be sold at a designated place, and it is so ordered by the court of course, without further inquiry. Judge Betts, in speaking of decrees for default and contumacy generally, says, that "if no one appears, the proctor moves the decree of default and condemnation, and that the matter be referred to the clerk for computation, or that a venditioni exponas issue, if no reference is necessary." Betts, Adm. 36. In some cases, of course, it is obviously necessary to institute some inquiry to liquidate the libellant's demand. Probably different district courts had prescribed different rules on this subject before the adoption of the general admiralty rules by the supreme court, in 1844. Where the rule was (as the twenty-ninth general rule now is), that the judge should proceed and hear the cause ex parte, Judge Ware said, in 1839, that according to the ordinary and regular course of the court, the cause should be heard upon the evidence produced upon the part of the libellant only. The Centurion [Case No. 2,554]. In a case before Judge Sprague, in 1858, on a libel in rem for a forfeiture in which the phrase of the statute, "The court shall proceed to hear and determine the cause according to law," was brought directly to his attention, he held that after default there must be some hearing before a decree of forfeiture, but to what extent, must depend upon the circumstances of the case. The court, he says, will at least examine the allegations of the libel to see if they are sufficient in law, and the return of the marshal and such affidavit or affidavits as the district attorney shall submit. Where it appears that the owners have had full notice of the proceedings and ample opportunity to intervene, and have voluntarily declined to do so, slight additional evidence will be sufficient. Indeed, a willful omission by the owners to answer, and thereby make disclosure as to the ma-

terial facts within their knowledge might of itself satisfy the court that a forfeiture should be decreed. But the court will require the prosecutor to introduce full pro f of the allegations in the libel, whenever the circumstances shall make it reasonable. U. S. v. The Lion [Id. 15,607].

The result seems to be that the court must be governed by a wise discretion, whether to require proofs or not. In all cases, proclamation to appear should be made and a decree entered for default and contumacy; and then, or upon reading the libel and proceedings thereon, and either with or without further proof as the court may direct, such decree should be made as the nature of the case may require. In the present case, being informed that the boat is a mere skiff, to which it is doubtful whether the inspection laws were meant to apply, I have deemed it advisable to hear proofs.

On the merits, D. J. Baldwin, U. S. Atty., cited and relied on sections 4399, 4400, 4426, 4437, 4443, 4446, and 4449, Rev. St. U. S., and the instructions of the treasuury department.

THE CIRCUIT JUSTICE. This is a libel against a small pleasure boat, twenty-nine feet long, seven feet wide, and without deck, but propelled by a small steam engine with cylinder of nine inches stroke and three and a half inches diameter. It is run occasionally by its owner and the owner of the engine for their amusement, on the Buffalo Bayou below Houston. In my judgment, this is not a vessel navigating the public waters of the United States, within the meaning of the steam inspection laws. Section 4426 of the Revised Statutes enumerates the various kinds of small steam craft which were intended to be embraced within the law. It declares that the hull and boilers of every ferry boat, canal boat, yacht, or other small craft of light character, propelled by steam, shall be inspected under the provisions of this title. Such other provisions of law for the better security of life as may be applicable to such vessels shall, by the regulations of the board of supervising inspectors, also be required to be complied with, before a certificate of inspection shall be granted. And no such vessel shall be navigated without a licensed engineer and a licensed pilot.

Now the vessel in question is neither a ferry boat, canal boat nor yacht. Does it belong to the added category of "other small craft of light character?" These words must be interpreted upon the principle of noscitur a sociis. The last clause of the section shows that, to be within the law, a vessel must at least be one which will admit of the employment of a licensed engineer and a licensed pilot. It is not to be supposed that a mere pleasure skiff, of the kind now under consideration, was intended to be embraced

within the regulations of this law. The libel is dismissed.

The same decree will be entered for the same reason in the case of U. S. v. The Bonita.