# HARTRANFT *v.* DU PONT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Submitted April 19, 1886.—Decided May 10, 1886.

The Repauno was a wooden vessel 37 feet in length at the water line, 8 feet beam, 3 feet 9 inches depth of hold, 2 feet 1 inch draught, with a small engine and boiler; could carry 25 persons in smooth water, and was used to transport her owner and superintendent, and occasionally some workmen across the Delaware, between Thompson's Point and Chester: *Held,* That, although it is sometimes difficult to draw the line between vessels so small and insignificant that they do not come within the inspection laws, and larger vessels which do come within them, the Repauno was liable to inspection under the statutes of the United States.

The case is stated in the opinion of the court.

*Mr. Assistant Attorney General Maury* for plaintiff in error.

No appearance for defendant in error.

Mr. Justice Woods delivered the opinion of the court.

This was an action at law brought by Du Pont, the defendant in error, against Hartranft, collector of customs, to recover $500, that sum being the amount of a penalty unlawfully exacted by Hartranft, as collector, from Du Pont, as the latter alleged. The facts were as follows: The plaintiff resided in Wilmington, Delaware. He was the proprietor of certain powder works at Thompson's Point, upon the Delaware River, across from Chester, Pennsylvania, and distant about two miles. He owned a wooden boat called the Repauno, open except her forward part, which was boarded over. Her dimensions were as follows: Length of water line, 37 feet; length of keel, 34 feet; width of beam, 8 feet; depth of hold, 3 feet 9 inches; draught of water, 2 feet 1 inch. She had a small engine and boiler, and was used by the plaintiff to transport himself and his superintendent across the Delaware River, between Thompson's Point and Chester. Occasionally the plaintiff used the boat to carry over his workmen, sometimes as many as nine or ten. When the water was smooth the boat could carry twenty-five persons. She never carried freight or passengers for hire. She had been inspected, but her papers had expired. When she was seized she was sailing without inspection papers. The plaintiff to get possession of her again, paid to the defendant, under protest, a penalty of $500, and brought this suit to recover it back.

The jury returned a verdict for the plaintiff for $500, based upon a finding of the foregoing facts, with point of law reserved, which was stated as follows:

"If the court should be of the opinion that a vessel of the size and description, and used as found by the jury, is liable to inspection under the statutes of the United States, the verdict and judgment to be entered for the defendant *non obstante veredicto;* and if the court should be of the opinion that such a vessel is not liable to such inspection, then the judgment to be

entered for the plaintiff on the verdict." Upon this verdict the court rendered judgment for the plaintiff, whereupon the defendant sued out this writ of error.

The defendant relies on the following provisions of Title 52 of the Revised Statutes, "Regulation of Steam Vessels," to justify the exaction of the penalty:

" Sec. 4399. Every vessel propelled in whole or in part by steam shall be deemed a steam vessel within the meaning of this title.

" Sec. 4400. All steam vessels navigating any waters of the United States which are common highways of commerce, or open·to general or competitive navigation, excepting public vessels of the United States, vessels of other countries, and boats propelled in whole or in part by steam for navigating canals, shall be subject to the provisions of this Title."

Sec. 4418, which provides, among other things, that " the local inspectors shall also inspect the boilers of all steam vessels before the same shall be used, and once at least in every ·year thereafter."

Sec. 4421, which provides, in substance, that when the inspection of a steam vessel is completed, and she and her equipment are approved, a certificate of inspection, verified by the oaths of the inspectors, shall be·issued.

" Sec. 4426. The hull and boilers of every ferry-boat, canal-boat, yacht, or other small craft of like character, propelled by steam, shall be inspected under the provisions of this Title. Such other provisions of law for the better security of life, as may be applicable to such vessels, shall, by the regulations of the board of supervising inspectors, also be required to be complied with, before a certificate of inspection shall be granted; and no such vessel shall be navigated without a licensed engineer and a licensed pilot."

The seizure in the present case was made under § 4499, which provides: " If any vessel propelled in whole or in part by steam be navigated without complying with the terms of this Title, the owner shall be liable to the United States in a penalty of five hundred dollars for each offence, one-half for the use of the informer, for which sum ·the vessel so navigated

shall be liable, and may be seized and proceeded against by way of libel in any District Court of the United States having jurisdiction of the offence."

The Repauno was a vessel propelled by steam and navigating the Delaware River, which is a water of the United States, and a common highway of commerce. She was, therefore, by the terms of § 4400 of the Revised Statutes, made subject to the provisions of Title 52. But, if there were any doubt about the application of the inspection laws to the Repauno, it would be removed by § 4426. It seems to us clear that the Repauno comes within the class of boats described in this section. Of course, she bears no resemblance to a canal-boat, but she only differs from a ferry-boat, as it is generally understood, in not conveying passengers for hire; and she differs from a yacht in not being sea-going, if, in fact, she is not sea-going, and in not being designed and used for pleasure merely. But, if neither a ferry-boat nor a yacht, she clearly falls within the meaning of the phrase " other small craft of like character." If such a boat, so constructed and used, is not included in that phrase, it would be difficult to name any that would be. If it is argued that the Repauno is not such a craft as Congress would require to carry a licensed engineer and a licensed pilot, the reply is, that, as § 4426 makes this requirement of a canal-boat propelled by steam, and subjects it to the other provisions of law for the better security of life, there is no reason why the same exactions should not be made of the boat in question.

The reason of the law applies to the Repauno. The purpose of Title 52 is primarily the protection of the passengers and crew and property on vessels propelled ·by steam. The law was passed also to protect the lives and property of persons on other boats and at the wharves. The Repauno was of sufficient size to cause peril to life and property by an explosion of her boiler, She was not a skiff. She was not a mere toy incapable of doing harm. The plaintiff's superintendent, who daily, and his workmen, who occasionally were carried back and forth upon her, and the pilot and engineer, who were required for her navigation, and the people in other boats who passed her on the water, or those who stood on the

docks where she landed, were entitled to the same protection which the law provided against the explosion of the boilers of larger craft. A boat propelled by steam, which habitually carries four persons and sometimes more, and is capable of carrying twenty-five, ought to be subject to inspection. The fact that, if her boiler should explode or her hull spring a leak, probably only four lives would be imperilled, does not occur to us as ground why she should be exempted from the provisions of the law requiring inspection of vessels propelled by steam.

In reaching this conclusion we have not overlooked the case of *United States* v. *The Mollie*, 2 Woods, 318. In that case the craft in question was of smaller dimensions than the Repauno, and was occasionally run by her owners for amusement on the Buffalo Bayou below Houston, Texas. She was held not to be within the inspection laws.

It may be difficult to draw the line between vessels propelled by steam which are so small and insignificant that they do not come within the inspection laws, and larger boats which do. But we are clearly of opinion that the Repauno belongs to the latter class, and that the penalty sued for in this case was lawfully enforced. The judgment of the Circuit Court must, therefore, be

*Reversed, and the cause remanded, with directions to grant a new trial.*

ˑMr. Justice Bradley dissenting.

I cannot agree to the judgment in this case. It seems to me that it carries the application of the statute to an unreasonable length. The boat in question was a mere skiff, not larger than a ship's yawl, with a capacity not exceeding that of a good-sized canoe, without deck, with a boiler not much larger than a tea-kettle, and a cylinder of seven inches stroke, and not much larger than a pop-gun. I think we are in danger of sticking in the bark by construing the statute as requiring such a vessel to be inspected. Indeed, it seems to me, that the terms of the law do not apply to such a boat. Its language is, " every ferry-boat, canal boat, yacht, or other small craft of *like character.*" Section 4426. The same section declares that

"no such vessel shall be navigated without a licensed engineer —and a licensed pilot." The boat in question is not of "like character," within the meaning of the statute. It seems absurd to require a man to have an inspection made of a mere skiff which he has rigged up to take him across the river to his shops, and to have a licensed engineer and licensed pilot to navigate it. With all due respect, I think it is running the application of the statute into the ground.