## Case No. 7,548.

The JOSHUA BARKER v. HOYT et al.

[See Case No. 7,547.]

## Case No. 7,549.

### The JOSHUA LEVINESS.

[9 Ben. 339; [1] 10 Chi. Leg. News, 230; 24 Int Rev. Rec. 124.]

District Court, E. D. New York. Feb., 1878.

---

[1] [Reported by Robert D. Benedict. Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Asst. Dist. Atty. Geo. W. Hoxie. for the United States.

C. E. Crowell, for the steamboat.

BENEDICT. District Judge. This is a proceeding to enforce against the steamboat Joshua Leviness a penalty of $500 for violation of the navigation laws. The proceeding is instituted under section 4499. The violation of law charged is running without having her hull and boiler inspected, as required by sections 4417, 4426, and 4427, and omitting to have a certificate of inspection displayed, as required by section 4423.

An exception and an answer to the information were filed, and the evidence thereafter taken, upon which pleadings and proofs the cause is now to be determined.

The question raised by the exception, which question was again presented upon the close of the testimony, is to be passed on first. That question is whether in a proceeding like this it is necessary to aver and prove an executive seizure of the vessel prior ·to the filing of the libel. This information contains no such averment, and the question is therefore fairly presented by the exception filed. This question appears to be similar in character to the question raised and decided by this court, and afterward by the circuit court of this district on appeal, in the case of The Missouri [Case No. 9,652]. U. S. v. The Missouri [Id. 15,785].

In that case the question arose under what is now section 3088, of the Revised Statutes. The language of that section is as follows: "Whenever a vessel, or the owner or master of a vessel. has become subject to a penalty for a violation of the Revenue Laws of the United States, such vessel shall be holden for the payment of such penalty, and may be seized and proceeded against summarily by libel to recover such penalty." Under that section it was held, in the case of The Missouri, that an executive seizure of the vessel prior to the commencement of an action was not necessary to give jurisdiction to enforce the lien there sought to be enforced. The present case arises under section 4499, which is part of the title (52) devoted to the regulation of steam-vessels. The words of section 4499 are as follows: "If any vessel propelled in whole or in part by steam be navigated without complying with the terms of this title. the owner shall be liable to the United States in a penalty of $500 for each offence, one-half to the use of the informer, for which sum the vessel so navigated shall be liable and may be seized and proceeded against. by way of libel, in any district court of the United States having jurisdiction of the offence."

I am unable to discover any difference between the legal effect of this provision of law and the provision considered in the case of The Missouri. The language is identical or nearly so, and all the reasons assigned for holding an executive seizure to be unnecessary in cases arising under section 3088, are equally applicable to a case like this. The determination of this case is, therefore, controlled by the case of The Missouri [supra], which, until reversed, must furnish the law for this circuit.

It may properly be added. that the rule laid down in the case of The Missouri has been followed in several cases that have since arisen in this port, and no case has been called to my attention in which any difficulty has been occasioned by the case of The Missouri, or in which it has been suggested that a different rule would be desirable. I am not unaware that in the case of The May [Case No. 9,330]. a conclusion was reached different from that announced in the case of The Missouri; but I conceive that the opinion delivered in the case of the tug May leaves it still open to be claimed that the considerations which impel to the opposite conclusion are of controlling weight, and, as before stated. the case cannot furnish authority for a decision of this court.

In view of the difference that has thus arisen between two circuit courts. it may be permitted to me to allude here to some questions suggested by the view of the law pre-

sented in the opinion delivered in the case of the tug May. The statute under which the proceeding against the vessel is taken seems to declare that the jurisdiction shall be determined by the offence. If a subsisting executive seizure be necessary to support the jurisdiction, what would be the effect of such a seizure made in a district other than the one where the offense had been committed?

The subject matter is the enforcement of a navigation law against a vessel employed in navigable waters of the harbor. Is it doubted that the district court in admiralty has jurisdiction of such a case as "a civil case of admiralty and maritime jurisdiction," and not as a case of "seizure on land or on waters not within the admiralty and maritime jurisdiction?" Rev. St. § 563, subd. 8. In the absence of any statute making an executive seizure to be a jurisdictional fact, can an executive seizure have then any effect upon the question of jurisdiction?

It is admitted that cases of this description do not involve forfeiture. They are simple cases to enforce a lien for $500, in which the vessel may be sold in order to realize the amount of the lien, but cannot be sold as forfeited to the United States. But executive seizures are "for forfeiture under any law of the United States" (Rev. St. § 734). In section 941 the implication appears to be that all cases of seizure are cases "for forfeiture," as also in section 923, where the language is, "when any vessel, goods, wares, or merchandize, are seized by an officer of the customs, and prosecuted for forfeiture by virtue of any law respecting the revenue," and by section 3059, the authority to seize is limited to cases where "it shall appear that any breach or violation of the laws of the United States has been committed, whereby or in consequence of which such vessel, or the merchandise or any part thereof on board of or imported by such vessel, is liable to forfeiture." Does not this last provision control the provision in section 3072, the latter being intended simply to extend the territorial jurisdiction of the officers? And in the absence of any known statute authorizing a custom house officer to seize property not forfeited, can it be considered clear that such authority can be derived from the general tenor and effect of the act of February 28, 1871? (Now title 52 of the Revised Statutes.) If it was intended by that act to authorize executive seizures, it would certainly have been easy to say so in section 4496. The studied absence of authority to seize from that section affords room to infer an intention to withhold a power that, if unduly exercised, must often greatly embarrass "steamers arriving and departing."

In regard to the 22d admiralty rule, which by its terms is confined to cases based on an executive seizure, it may be asked how can such a rule show that all informations must be so based? In regard to the forms in Benedict's Admiralty, as well as the decision of the supreme court of the United States in respect to seizures, I remark that so far as I know, when those cases arose no statute was in force which gave a lien for a fixed sum as punishment for a violation of law. So far as my examination extends, the cases were all cases where the property seized had become the property of the United States by reason of acts entailing a forfeiture.

These considerations are with great respect submitted, as throwing light upon the question involved, but the exception is overruled upon the authority of the case decided by the circuit court of this district.

The remaining question is raised by the answer to the information. The averments of the information are that, on the 1st day of January, 1877, and at all times since, the vessel was navigating the bay and harbor of New York, within the jurisdiction of this court, without any application in writing having been made by her owner or master for an inspection, and without having been inspected or any certificate of inspection having been issued, and without having a certificate of inspection kept framed under glass and placed as required by section 4423, and without having had her hull and boilers inspected, as required by sections 4426 and 4427 of the Revised Statutes. The answer sets up facts which, it is claimed, show that the vessel, at the time in the information mentioned, was in an unfinished state, and that she never was navigated within the meaning of the statute, and, further, that she was proceeded against in this action pending an application for inspection.

It appears from the evidence that the hull of the vessel was built at City Island, in the Sound; that, in September, 1876, the hull was taken through the canals—as the answer says—to Norfolk, Virginia, for the purpose of having the engine there put in; that the engine was then put in, and the boat, being still not fully completed, was brought back from Norfolk to City Island, and on her way back stopped at New York, and, the next day, was taken to City Island, for the purpose of being there completed. After her return to City Island, a verbal application was made for an inspection, to which the reply was made that the boat would not be inspected until completed, and that she must be brought down to New York and would there be inspected. Thereupon, on the 18th of January, the boat was brought down to New York, carpenters being still at work on her as she came. She was libelled the day after her arrival in New York, not having made any voyages other than those described.

It will be seen that the inquiry here is, by the averments of the information, limited to navigation in the bay and harbor of New

York and the East river, and to a period including and subsequent to January 1, 1877. The question that arises, then, is whether transporting this vessel while in an unfinished state, from New York to City Island on her way from Norfolk, or transporting her back from City Island to New York, without having been inspected, was navigation of her without complying with the navigation laws within the meaning of section 4499. I am of the opinion that it was not, and for this reason. It seems quite clear that according to the intention of the statute, inspection of a vessel is not to be made when she is in an unfinished state. It is only a completed vessel, ready for the business for which she is intended, that can be passed by the inspectors, as constructed in accordance with the navigation laws. It follows that neither the duty to make application for inspection nor the duty to inspect attaches, while the vessel is unfinished. Therefore, to hold that moving an unfinished vessel from one place to another in the course of her construction, is navigating her within the meaning of the statute, is to forbid the construction of vessels except at places where they can be completed in all their parts. Such was not the intention of the statute. The object sought by the statute is attained when it is held that as soon as the vessel is completed she shall be inspected, and that the obligation to apply for inspection does not attach until she is completed. It is true that this construction of the statute affords some opportunity for attempting to evade the law, by continuing work upon a new vessel after she has, in fact, begun to be employed as a vessel for the transportation of freight and passengers; but I apprehend that little difficulty will be found in dealing with such cases when they arise.

If the transportation of this vessel had been undertaken for the purpose of earning money, I should unquestionably hold her liable to this prosecution, upon the ground that after a vessel has begun her work, it is not open to her owner to say that she is not finished as he intended to have her finished for such work. But this is no such case. The good faith of the parties is apparent. The vessel went from City Island to Norfolk for the sole purpose of having her engine put in her. She earned neither passage-money nor freight, and the transaction was similar in character to the ordinary and necessary moving of a new vessel from the ship-yard where she is launched, to the engine builder's, where she takes in her engine. The only object of going from City Island to Norfolk was for the purpose of being there completed. The stoppage at New York on her return was a mere incident to that voyage.

She took on no freight or passengers at New York. I am, for these reasons, of opinion that the passage from New York to City Island, under such circumstances, was not a violation of the navigation laws.

The passage from City Island back to New York might also be held to be disposed of by what has been said, inasmuch as the evidence shows that the workmen engaged in her construction had not yet left her. But the evidence is not very definite as to what work was done on her after she left City Island. I therefore dispose of this branch of the case upon another ground, namely, that the transportation from City Island to New York was in consequence of the direction from the inspectors that the boat be brought from City Island to New York, to enable her to be inspected at New York. That voyage was, therefore, in a fair sense, a necessary voyage, undertaken for the sole purpose of bringing the boat to the place of inspection designated by the officers, and is to be considered as part of the proceeding to obtain inspection, which the law enjoins. The vessel was libelled on the day after her arrival in New York, and when she had not removed from the wharf at which she moored upon her arrival. It cannot, therefore, be held that the voyage from City Island to New York was a navigation of the boat in violation of the navigation laws.

I have not overlooked the fact that this boat, when she came from City Island to New York, brought a few baskets of oysters. Such a fact requires explanation. And it has been furnished, for it appears that the boat became frozen up at City Island, and was unable to procure any proper ballast; Whereupon the owner put on board a few baskets of oysters, for the purpose of trimming his vessel, so as to enable her to proceed to New York with safety. The oysters were not taken on freight, but belonged to the owner, and their presence on board does not change the aspect of the case.

The information contains a count under section 4423, charging as a non-compliance with the navigation laws, the omission to have any certificate of inspection placed in a conspicuous place in the vessel; and it has been contended that the omission to have a certificate so placed renders the vessel liable, whether the vessel had been navigated or not. But the sufficient answer to this proposition is, that no certificate could be displayed when none existed, and the statute is not intended to require an impossibility. Section 4423 can have no effect in the case of a vessel that has never been inspected, and where for that reason it is impossible to have a certificate displayed.

Upon these grounds, therefore, the information in this case must be dismissed.