## THE SCOW NO. 1.

### (District Court, E. D. New York. April 5, 1909.)

1. SHIPPING (§ 3*)—REGULATION OF VESSELS CARRYING PASSENGERS—POWER OF CONGRESS.

   All vessels carrying passengers within the jurisdiction of the United States are subject to regulations prescribed by Congress, even if the waters navigated are entirely within a state.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 2; Dec. Dig. § 3.*]

2. SHIPPING (§ 16*)—REGULATION OF PASSENGER VESSELS—OFFENSES AGAINST NAVIGATION LAWS.

   Where a scow temporarily equipped for the purpose and in tow of a tug carried a picnic party of 350 persons without being provided with life-preservers as required by the regulations of the board of supervising inspectors, adopted pursuant to Rev. St. § 4492 (U. S. Comp. St. 1901, p. 3058), she is not relieved from liability for the penalty thereby provided by the fact that she was furnished to the party without charge except for expenses.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 30; Dec. Dig. § 16.*]

William J. Youngs, U. S. Atty. (William P. Allen, of counsel), for libelant.

Joseph Fettretch, for defendant.

CHATFIELD, District Judge. An information has been filed against Scow No. 1, for proceeding, in tow of the tugboat Turtle, across the waters of Great South Bay on the 21st day of August, 1907, with some 350 passengers, without having a life-preserver or float for each passenger, as required by the rules and regulations adopted, as amended, by the board of supervising inspectors in the month of January, 1907, being section 22, p. 77, of said regulations, and reading:

"Barges carrying passengers on any routes shall have a life-preserver or float for each and every person allowed to be carried." See section 4492, Rev. St. (U. S. Comp. St. 1901, p. 3058).

The claimant has appeared and answered, denying the violation and liability, and as well alleging that Scow No. 1 was not a barge for the carrying of passengers, within the meaning of the law referred to, and therefore not subject to its provisions.

The facts are not in dispute, and from them it appears that the tugboat was properly licensed and equipped with life-preservers in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

compliance with the law and requirements; that neither the tugboat nor the barge is used generally in the passenger business, but that for this particular occasion the tug and barge, which is in reality a freight scow, were chartered to a Sunday school for the purpose of a picnic at a point upon the south side of Great South Bay, which thus necessitated a trip across the bay and back; and that the compensation received by the claimant was $30, intended to represent the actual cost of placing seats upon the scow, and furnishing awnings, together with the wages of the men and the coal consumed. No tickets were issued by the claimant, nor was any passage fee charged, but the boat was furnished to the Sunday school, and 350 passengers carried, while but 15 life-preservers were on the boat.

It is unnecessary to enlarge upon the disaster which might have resulted if any accident requiring the use of boats or life-preservers had occurred. The examples are many, and the necessity for regulations with relation not only to boats in the passenger-carrying business, but to boats used for more or less charitable purposes, is admitted by every one. Many of the most distressing instances of great loss of life have been in connection with such expeditions as Sunday school picnics and children's parties at theaters and other public places. The hardship that may be involved to the charitable and well disposed in complying with requirements providing precautions which may be entirely unnecessary (if nothing occurs) cannot be weighed in the balance with the tremendous loss of life which may result through the natural feeling that the law was not aimed at people of such good intentions and good character. Nevertheless, no amount of respect for the law and willingness to abide by it, where no hardship is involved, could restore those who might be lost or injured if the possible accident should occur.

It has been well established in many cases, including The Hazel Kirke (C. C.) 25 Fed. 601; The Garden City (D. C.) 26 Fed. 766; The City of Salem (D. C.) 37 Fed. 846; The Oyster Police Steamers of Maryland (D. C.) 31 Fed. 763; and Hartranft v. Du Pont, 118 U. S. 225, 6 Sup. Ct. 1188, 30 L. Ed. 205—that all vessels carrying passengers within the jurisdiction of the United States (under either the interstate commerce clause or the admiralty provisions of the Constitution) are liable to the regulations provided by statute.

Section 4400, Rev. St. (U. S. Comp. St. 1901, p. 3015), relating to the entire fifty-second title of the Revised Statutes, within which all of the sections referred to herein are comprised, provides that all steam vessels navigating any waters of the United States, which are common highways of commerce or open to general or competitive navigation, shall be subject to the provisions of the title. It is evident that Congress there exercised jurisdiction over interstate and foreign commerce by vessel and over admiralty or maritime jurisdiction of the United States such as extends over the waters of Great South Bay, even if the particular act involved takes place or must take place entirely within the boundaries of the state of New York. The case of United States v. Banister Realty Co. (C. C.) 155 Fed. 583, sets forth the authorities, and they need not be recited.

Reference has been made to the cases of The Gretna Green (D. C.) 20 Fed. 901, and United States v. Guess (D. C.) 48 Fed. 587. But in the first case, the decision seems to have turned upon the fact of protecting interstate commerce on the Ohio river, and that the barges were not engaged in such commerce; while in the Guess Case, the wife and certain friends of the owner were being transported upon the vessel, and they were not held to be passengers within the true sense of the term. In other words, they were partners in the transaction, so far as regulation by the public was concerned. But in the case at bar, the hardship involved cannot overbalance the necessity for care in such matters.

A violation of the statute, if disaster followed, must necessarily be severely punished. If the excursion happily proceeds without accident, the matter may be less serious, and it is suggested that an application to the Secretary of the Treasury, under the provisions of section 5292 of the Revised Statutes (U. S. Comp. St. 1901, p. 3604), would be the proper procedure. The discretion of the Secretary of the Treasury could safely be trusted in such matters, and furnish a much safer guide than could be afforded by excepting charitable or casual excursions from the scope of the law. If the claimant in the present case, instead of disputing jurisdiction, should lay the matter before the proper authorities, he probably will find full justice and avoid opening the door to those who desire to be put to as little expense as possible in protecting life, even in matters as to which Congress has deemed it necessary that such protection should be afforded.

A decree of condemnation may be presented.