## THE "CITY OF PANAMA."

The act of Congress approved March 2, 1853, entitled "An Act to establish the territorial government of Washington" (10 Stat. 172), enacts that the district courts of the Territory shall have and exercise the same jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the circuit and district courts of the United States, and also of all cases arising under the laws of the Territory. *Held*, that the district courts of the Territory have jurisdiction in admiralty cases.

APPEAL from the Supreme Court of the Territory of Washington.

This is a proceeding in admiralty commenced in the District Court of the third judicial district of the Territory of Washington by Mary Phelps and John S. Phelps, her husband, against the steamship "City of Panama," owned and claimed by the Pacific Mail Steamship Company, to recover damages for personal injuries sustained by the libellant Mary Phelps while a passenger on board said steamship.

The remaining facts are stated in the opinion of the court.

*Mr. Austin G. Fox* for the appellants.
*Mr. Philip Phillips, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Judicial power as well as legislative is conferred upon the territorial government by the organic act establishing the Territory, the provision being that the judicial power shall be vested in a supreme court, district courts, probate courts, and in justices of the peace. Appellate jurisdiction from the district courts to the supreme court is also given, and with that view the provision is that writs of error, bills of exception, and appeals shall be allowed under such regulations as may be prescribed by law, from which it plainly follows that the district courts created by the organic act are and were intended to be courts of general original jurisdiction.

Provision is also made for writs of error and appeals from the territorial Supreme Court to the Supreme Court of the United States in the same manner and under the same regulations as are required to remove here the judgment or decree of the Fed-

eral Circuit Court for re-examination, where the value of the property or the amount in controversy exceeds two thousand dollars, or where the Constitution of the United States or an act of Congress or a treaty is brought in question.

Express power is also given to the district courts of the Territory to have and exercise the *same* jurisdiction in all cases arising under the Constitution and laws of the United States as is vested in the circuit and district courts of the United States, and also of all cases arising under the laws of the Territory. 10 Stat. 175; Rev. Stat., sects. 1910, 1911.

Matters of fact of a preliminary nature, disconnected with the question of jurisdiction, are not controverted; as, for example, it is not disputed that the steamship is owned by the respondent steamship company, and that she is one of the line they employ in the transportation of passengers and freight between the port of Seattle, one of the ports of Puget Sound, and the port of San Francisco, in the State of California; nor is it denied that the complaining party purchased a ticket as a cabin passenger for a passage, at the time alleged, from the former to the latter port, nor that she went on board for that purpose, and that a stateroom was assigned to her for use during the voyage by the proper officer or agent in charge.

None of these matters are denied in the argument here, and the injured party alleges that while she had stepped into her stateroom for a few minutes a portion of a concealed hatchway in the floor of the cabin near the door of her stateroom was uncovered by some of the officers, agents, or employés of the company, and was by their gross carelessness and negligence left open and unguarded, in consequence of which and without her fault she, in returning from her stateroom to the cabin, fell through the hatchway down into the hold of the steamship, a distance of about twenty feet, whereby she broke and crushed the bones of her right arm and received other grievous injuries, which, as she believes, will disable her for life.

Compensation for her injuries being refused by the company, she, her husband joining with her, instituted the present suit *in rem* against the steamship in the proper district court of the Territory to recover such redress as the law affords in such cases. Ser-

vice was made and the respondents appeared and demurred to the libel for several causes, of which the following are the most material in this investigation : (1) That the District Court had no jurisdiction of the subject-matter alleged in the libel. (2) That neither the acts of Congress nor the admiralty rules of practice promulgated by the Supreme Court apply in the courts of the territory.

Hearing was had and the District Court overruled the demurrer and the respondents excepted. Other proceedings took place before the respondents answered the libel, but they are omitted as now unimportant. Brief reference to the answer of the respondents will be sufficient, as the question of jurisdiction is the one chiefly discussed in this court. Apart from that, the material matters of defence set forth in the libel consisted of a denial that the allegations of the fourth and fifth articles were true, and the respondents expressly denied that the injuries of the complaining party were in any respect caused by the carelessness or negligence of the officers or employés of the steamship. Testimony was taken, hearing had, and the District Court having made a finding of facts entered a decree in favor of the libellants for the sum of five thousand dollars. Both parties appealed to the territorial Supreme Court, where they were allowed to adduce evidence in open court. All of the testimony introduced was taken down by the order of the court and is reported in a document called a bill of exceptions. Certain motions were made by the respective parties which are not deemed material, and the parties having been again fully heard the Supreme Court entered a decree in favor of the libellants in the sum of fifteen thousand dollars, from which the respondents appealed to this court. Since the cause was entered here the respondents have filed the assignment of errors set forth in their brief, numbered from one to eleven inclusive, of which the first two call in question the jurisdiction of the territorial courts.

Jurisdiction of the territorial Supreme Court cannot be successfully denied if it be established that the original jurisdiction of the cause was vested in the District Court, as the organic act provides that writs of errors, bills of exception, and appeals shall be allowed in all cases from the final decisions of said

District Court to the Supreme Court, under such regulations as may be prescribed by law, from which it follows that the present investigation is necessarily limited to the inquiry whether the District Court had jurisdiction to hear and determine the controversy.

Chancery, as well as common law, jurisdiction is in terms vested both in the supreme and district courts, and the same section provides that the district courts shall have and exercise the same jurisdiction under the Constitution and laws of the United States as is invested in the circuit and district courts of the United States, which is a plain reference to the enactments of Congress defining the original jurisdiction of those courts. Appellate jurisdiction is in some cases exercised by the Federal circuit courts, but inasmuch as the entire appellate judicial jurisdiction of the territory had previously been given to the Supreme Court by the same section of the organic act, it is obvious that it is original and not appellate jurisdiction that is there conferred by that clause.

Cognizance of an original character was given to the district courts, concurrent with the circuit courts, by the ninth section of the judiciary act as amended, long prior to the passage of the organic act in question, of all crimes and offences against the authority of the United States, the punishment of which is not capital, whether committed in their respective districts or upon the high seas. 1 Stat. 16; 5 id. 517.

Admiralty and maritime cognizance, original and exclusive, was also vested in those courts of all civil causes of the kind, including all seizures under laws of impost, navigation, or trade, where the seizures are made on waters navigable from the sea by vessels of ten or more tons burden. Rev. Stat. sect. 568.

Original cognizance in certain cases, concurrent with the courts of the several States, was given to the circuit courts in suits of a civil nature at common law or in equity, and of all crimes and offences cognizable under the Federal authority, except where that act otherwise provides, and concurrent jurisdiction of the crimes and offences cognizable in the district courts. 1 Stat. 88; Rev. Stat. sect. 629.

Such jurisdiction of the territorial district courts within the

respective districts is made co-extensive with both the Federal circuit and district courts, for reasons which will be obvious to any one who will compare the two sections, one with the other, in their practical operation.    Two classes of courts are created in the Federal system for the exercise of the necessary original jurisdiction, but in the territory, as provided in the organic act, there is but one class of courts created for that purpose.    Had Congress limited the jurisdiction of the territorial district courts to that exercised by the Federal district courts, then those courts could not have taken cognizance of controversies in patent cases nor of crimes or offences against the authority of the United States, where the punishment is death, and if their jurisdiction had been limited to that exercised by the circuit courts, then those courts would have had no cognizance whatever of admiralty and maritime causes, or of seizures on water where the proceeding is according to the course of the admiralty law.

Power to make all needful rules and regulations respecting the public territory is vested in Congress, and in the frequent exercise of that power the usual form for an organic act in such a case has become a very complete and well digested preparatory system of government.    Two examples of courts having such jurisdiction are found in the tenth section of the judiciary act, where the Federal district courts in two districts were empowered to exercise jurisdiction in addition to what was conferred by the ninth section of the judiciary act of all other causes, except appeals and writs of error, made cognizable in a circuit court, and with authority to proceed therein in the same manner as a circuit court.

Argument to show that jurisdiction in admiralty cases is properly exercised by the Federal district courts under the ninth section of that act is quite unnecessary, as every one knows that jurisdiction in such cases has been exercised by those courts under that provision from the passage of the act to the present time, with the sanction of every Federal court organized pursuant to the Constitution and the laws of Congress.    Doubt at one time was suggested whether those courts could properly exercise judicial cognizance in prize cases, inasmuch as the section does not in terms confer such jurisdiction, but the Supreme

Court held that prize was a branch of the admiralty and that as such jurisdiction was vested in the district courts by the ninth section of the judiciary act. *The Admiral*, 3 Wall. 609, 612 ; *Glass* v. *Sloop Betsey*, 3 Dall. 16.

Prior to the act of the 3d of March, 1863, the Supreme Court had no jurisdiction in prize cases, except when the same were removed here from the circuit courts, but the acts of Congress referred to provides that the decrees in such case may be appealed from the District Court directly to the Supreme Court, which leaves the circuit courts without jurisdiction in prize cases. Beyond all question admiralty jurisdiction, including jurisdiction in prize cases, was vested in the territorial district courts by the ninth section of the organic act, the explicit language of the act being that the district courts of the territory shall have and exercise the same jurisdiction in all cases arising under the Constitution and laws of the United States, as is vested in the circuit and district courts of the United States, and also of all cases arising under the laws of the territory.

Earnest effort is made in argument to show that inasmuch as a case in admiralty does not strictly arise under the Constitution and laws of the United States, that the clause of the organic act referred to does not vest jurisdiction to hear and determine such cases in the territorial district courts, for which proposition they refer to one of the decisions of this court. *The American Insurance Co.* v. *Canter*, 1 Pet. 511, 546.

Select passages of the opinion in that case, when detached from the context, may appear to support the theory of the respondents, but the actual decision of the court is explicitly and undeniably the other way.

Cotton in bales to a large amount was shipped at New Orleans for transportation to Havre de Grace, and it appears that the ship was wrecked off Florida, from which the cotton was saved and was carried to Key West, where it was sold by order of the Territorial Court to satisfy a claim for salvage amounting to. seventy-six per cent of the property saved. Prior to the loss the shippers had effected insurance, and they abandoned the same to the underwriters. Part of the cotton subsequently arrived at Charleston, when the underwriters

libelled the same as their property by virtue of the abandonment. Hearing was had and the District Court pronounced the proceeding of the Territorial Court at Key West a nullity, and ordered the property to be restored to the libellants, subject to a certain deduction for salvage. Both parties appealed to the Circuit Court, where the decree of the District Court was reversed and a decree entered restoring the cotton to the claimant, when the libellants appealed to the Supreme Court.

State courts have no jurisdiction in admiralty cases, nor can courts within the States exercise such jurisdiction, except such as are established in pursuance of the third article of the Constitution, but this court in that case, Mr. Chief Justice Marshall giving the opinion, decided expressly that the same limitation does not extend to the territories; that in legislating for the territories, Congress exercises the unlimited powers of the general and of a State government, which is a complete confirmation of the proposition that the construction given to the ninth section of the organic act by the Supreme Court of the territory is correct.

Confirmation of that view is also derived from other remarks made by the chief justice in that same case. We think, then, he said, that the act of the territorial legislature creating the court, by whose decree the cargo of the wrecked ship was sold, is not "inconsistent with the laws and Constitution of the United States," and that it is valid. Consequently the sale made in pursuance of it changed the property, and the decree of the Circuit Court awarding restitution of the property to the claimant ought to be affirmed.

Admiralty jurisdiction in that case had been exercised by a court created by a territorial statute, but the court whose jurisdiction is called in question in this case was created by the organic act passed by Congress to establish the territory. Conkling's Treatise (5th ed), 290.

Existing territories are all organized under organic acts containing similar provisions, and in most or all the Federal power is vested in a supreme court, district courts, probate courts, and justices of the peace; and the organic act of each describes the jurisdiction of the district courts in substantially the same

language, which is also found in the organic acts of former territories since admitted as States.

Our Constitution, in its operation, is co-extensive with our political jurisdiction, and wherever navigable waters exist within the limits of the United States, it is competent for Congress to make provision for the exercise of admiralty jurisdiction, either within or outside of the States; and in organizing territories Congress may establish tribunals for the exercise of such jurisdiction, or they may leave it to the legislature of the territory to create such tribunals. Courts of the kind, whether created by an act of Congress or a territorial statute, are not, in strictness, courts of the United States; or, in other words, the jurisdiction with which they are invested is not a part of the judicial power defined by the third article of the Constitution, but is conferred by Congress in the execution of the general power which the legislative department possesses to make all needful rules and regulations respecting the public territory and other public property.

Six days of every term of such district courts, or so much thereof as shall be necessary, are required by the act of Congress to be appropriated to the trial of causes arising under the Constitution and laws of the United States, which of itself is sufficient to show that, in the view of Congress, their jurisdiction extends to all such matters of controversy.

Cases arising under the Constitution, as contradistinguished from those arising under the laws of the United States, are such as arise from the powers conferred, or privileges granted, or rights claimed, or protection secured, or prohibitions contained in the Constitution itself, independent of any particular statutory enactment. Examples of the kind are given by Judge Story in his commentaries, which fully illustrate what is meant by that constitutional phrase. On the other hand, it is equally plain that cases arising under the laws of the United States, are such as grow out of the legislation of Congress within the scope of their constitutional authority, whether they constitute the right, privilege, claim, protection, or defence of the party, in whole or in part, by whom they are asserted or invoked. 2 Story Const., sect. 1647.

Instances where such jurisdiction has been exercised by the

territorial district courts under such acts are numerous, and
they extend from the time our territorial system was organ-
ized to the present time, and the power has always been exer-
cised without challenge from any quarter and without the least
doubt of their constitutional or legal authority.   Were the
meaning of the act doubtful, which cannot be admitted, the
rule is universal that the contemporaneous construction of such
a statute is entitled to great respect, especially where it ap-
pears that the construction has prevailed for a long period, and
that a different interpretation would impair vested rights —
*contemporanea expositio est fortissima in lege.*   Sedgw. Stats.
(2d ed.) 213.

Maritime cases, in every form of admiralty proceeding, have
been heard and determined in the territorial district courts, and
by appeal in the supreme courts of the territories.   *Cutter*
v. *Steamship*, 1 Oreg. 101 ; *Price* v. *Frankel*, 1 Wash. T. 43 ;
*Meigs* v. *The Steamship Northerner*, id. 91 ; *Griffin* v. *Nichols*,
id. 375 ; *Phelps* v. *City of Panama*, id. 320.

Two cases, being cross-suits, were appealed to this court
from decrees rendered by the Supreme Court of the territory
for re-examination as admiralty appeals.   Nobody questioned
the jurisdiction either of the subordinate courts or of this court,
and the parties were fully heard in both cases.   Both decrees
were reversed, and the causes remanded with directions to dis-
miss the libel in the cross-suit, and in the other to enter a
decree in favor of the libellants for the amount of the damage.
*Steamship Northerner* v. *Steam-tug Resolute*, Dec. Term, 1863,
not reported.

Judges of long experience heard and decided those cases, no
one of whom ever intimated any doubt that the territorial
courts had such jurisdiction in admiralty causes as is vested in
the Federal, district and circuit courts.   For these reasons we
are all of the opinion that the objection to the jurisdiction
of the courts below must be overruled.

Prior to the recent act of Congress no provision was ever
enacted for a trial by jury in an admiralty cause, and it
is so clear that the existing provision does not afford any
countenance to the complaint of the respondents, in view
of the facts disclosed in the record, that it is not deemed

necessary to give the subject any further consideration. 18 Stat. 315.

Injuries of the kind alleged give the party a claim for compensation, and the cause of action may be prosecuted by a libel *in rem* against the ship ; and the rule is universal that if the libel is sustained, the decree may be enforced *in rem*, as in other cases where a maritime lien arises. These principles are so well known and so universally acknowledged that argument in their support is unnecessary.

Owners of vessels engaged in carrying passengers assume obligations somewhat different from those whose vessels are employed as common carriers of merchandise. Obligations of the kind in the former case are in some few respects less extensive and more qualified than in the latter, as the owners of the vessel carrying passengers are not insurers of the lives of their passengers, nor even of their safety, but in most other respects the obligations assumed are equally comprehensive and even more stringent. Carriers of passengers by land, it was said in one of the early cases, are not liable for injuries happening to passengers from unforeseen accident or misfortune, where there has been no negligence or default ; but it was held in the same case that the smallest negligence would render the carrier liable, and that the question of negligence was for the jury. *Aston* v. *Heaven*, 2 Esp. 533.

Passengers must take the risk incident to the mode of travel which they select, but those risks in the legal sense are only such as the utmost care, skill, and caution of the carrier, in the preparation and management of the means of conveyance, are unable to avert. *Hegeman* v. *The Western Railroad Corporation*, 13 N. Y. 9.

When carriers undertake to convey persons by the powerful but dangerous agency of steam, public policy and safety require that they be held to the greatest possible care and diligence, the true requirement being that the personal safety of the passengers shall not be left to the sport of chance or the negligence of careless agents. *Philadelphia and Reading Railroad Company* v. *Derby*, 14 How. 468, 486.

Persons transported in such conveyances contract with the proprietors or owners of the conveyance and not with their

agents as principals, and the question of the liability of the proprietor or owner is wholly unaffected by the fact that the defective ship, car, engine, or other apparatus was purchased of another, if the defect is one that might have been discovered by any known means.

Mistakes sometimes occur in the investigation of such a case by overlooking the fact that it is the carrier, whether shipowner, corporation, or individual that assumes the obligation, for a breach of which a right of action accrues to the passenger. Proof of a formal contract is not required, as the obligation of the carrier is implied from his undertaking to transport the passenger.

Tested by these considerations, it is clear that the rulings and decision of the court below are correct, and that the fourth and fifth assignments of error must be overruled. *Pendleton* v. *Kinsley*, 3 Cliff. 416, 421; *Stokes* v. *Saltonstall*, 13 Pet. 181.

Comment upon the sixth assignment of error is unnecessary, as there was no satisfactory evidence introduced by the respondents to show that the libellant was guilty of any negligence whatever.

Complaint is also made that the amount allowed for injuries received is excessive, which makes it necessary to refer to he finding of facts exhibited in the transcript, from which it appears that the libellant was wholly unaware of the hatchway, and that in coming from her stateroom she, without fault on her part, fell through it into the hold of the ship, whereby her arm was broken, and she was greatly bruised and permanently injured, as is more fully set forth in the findings and evidence.

Exceptions were filed in the District Court setting forth the evidence, which was sent up to the Supreme Court with the transcript. Due appeal having been taken by each party, the cause was heard in the Supreme Court upon the findings and evidence made and given in the court of original jurisdiction, and sent up with the transcript, together with the evidence adduced in the appellate court. Application for a rehearing was made in the Supreme Court, which was denied, and the Supreme Court made an extended finding of facts as

showing the basis of their judgment. Without entering into those details, it must suffice to say that it shows conclusively that the complaint of the respondents, that the amount allowed is excessive, is not well founded, and is therefore overruled.

Other minor objections are taken to the proceedings in the Supreme Court, all of which may be sufficiently answered by referring to that part of the organic act, which allows an appeal from the District Court to the Territorial Supreme Court, and from the final judgment of the latter court to this court, in the same manner and under the same regulations as from the Federal circuit courts. 10 Stat. 176.

Damages in such a case must depend very much upon the facts and circumstances proved at the trial. When the suit is brought by the party for personal injuries, there cannot be any fixed measure of compensation for the pain and anguish of body and mind, nor for the permanent injury to health and constitution, but the result must be left to turn mainly upon the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is a just compensation for the injuries inflicted. *Railroad* v. *Barron*, 5 Wall. 90, 105 ; *Curtis* v. *Rochester and Syracuse Railroad Company*, 18 N. Y. 534, 543.

Viewed in the light of these suggestions we see no just ground to conclude that the amount allowed by the Supreme Court is excessive, and accordingly overrule the remaining assignment of errors. Wood's Maine, 73 ; *Wright* v. *Compton*, 53 Ind. 337.

*Decree affirmed.*