## UNITED STATES *v.* GUESS.

*(District Court, E. D. Louisiana.* December 23, 1891.)

SHIPPING REGULATIONS—INSPECTION—PASSENGERS.

> Where the wife and neighbors of a tug-owner go upon the tug during a trial trip, merely to witness the test of her machinery, they are not passengers, within the meaning of the statute requiring passenger boats to be inspected and licensed; and the owner is not liable to the fine imposed by Rev. St. U. S. § 4499, for navigating any vessel contrary to the shipping regulations.

In Admiralty. Libel of information against C. M. Guess to recover a penalty for carrying passengers on a steam-tug not inspected or licensed to carry passengers. Libel dismissed.

*Wm. Grant*, U. S. Atty.

*E. Sabourin*, for defendant.

BILLINGS, J. This case is submitted on the libel of information, and the answer and the affidavits and depositions taken under a commission. The suit is for a penalty of $500 for a violation of the Revised Statutes, in this: That the steam-tug of the defendant, the Black Prince—

"Being an American vessel propelled by steam, and not being a public vessel of the United States, or of any other country, and not being a ferry-boat or a boat propelled in whole or in part by steam for navigating canals, was engaged in navigating waters of the United States which are common highways of commerce, and open to general and competitive navigation, in that, while navigating as aforesaid, she did carry as passengers, not having then and there been inspected and licensed as a passenger steam-boat, and not having a certificate from any board of local inspectors of steam-vessels of approval of said vessel and her equipments, as proper for such service, contrary to the form of the statute."

It is to be seen that the *gravamen* of the charge in the information is that the defendant, as owner, had violated the statute, in that, while navigating his vessel, he had carried passengers upon a steam-tug without a certificate of inspection. The only point presented is whether the steam-tug did carry passengers. The proofs adduced by the libelant's depositions, and by the answer of the defendant and his affidavits, contain no conflict of evidence. They all show that the steam-tug Black Prince, in the summer of 1890, had to be laid up for extensive repairs; that after they were made and completed, solely with a view "to test the machinery, and to ascertain if it worked satisfactorily," the defendant, the owner of the boat, raised steam, and steamed down the Bayou Teche, from New Iberia to Jeanerette and back, a distance of 10 miles each way; that the time occupied in going and returning was about four hours; that the persons described in the information as passengers were the wife and neighbors of the owner, who had no purpose in being on board, except to accompany the owner in his effort to see the working of the repaired machinery. There is no proof that there was any commercial purpose intended or accomplished, or any transportation as travelers, in

this movement, either on the part of the owner or the guests who are charged in the information to be passengers.

The language of the libel conforms to that of the statute, (Rev. St. § 4499,) and avers or charges that the Black Prince, being, *i. e.*, "was navigated;" the language of the statute being, "if any vessel, propelled in whole or in part by steam, be navigated." Could it be said that this steam-tug, making this four-hour trip, landing nowhere, having no commercial communication with any point, except that of starting, and no purpose in the movement save to test the machinery of the boat, was being navigated so as to include her within the rules of navigation which are made by congress under the power to regulate the interstate and foreign commerce? It seems to me the whole movement of vessels and people on board in its object prevents these persons from being considered as passengers, within the meaning of the law. The case of *Hartranft* v. *Du Pont*, 118 U. S. 223, 6 Sup. Ct. Rep. 1188, is relied upon by the United States. But the Repauno in that case had been used by the plaintiff to transport himself, his superintendent, and sometimes nine workmen to and from their place of work. The transportation in that case was as truly within the sphere of commerce, and the navigating was as truly commercial navigation, as if the persons conveyed had been carried for hire by a common carrier. But in *Transportation Line* v. *Cooper*, 99 U. S. 78, the supreme court, without giving any reason, held that a canal-boat laden with coal for transportation, having on board the master with his family, is not a barge carrying passengers, within the meaning of section 4492, Rev. St., which requires such a barge, while in tow of a steamer, to be provided with "fire-buckets, axes, life-preservers, and yawls." The case most nearly resembling this is *The Joshua Leviness*, 9 Ben. 339, in which it was held that a voyage from City Island to New York, made by a vessel just constructed, to enable her to be inspected, is not a violation of the navigation laws. In *Gibbons* v. *Ogden*, 9 Wheat. 1, the court assert the supreme authority of congress under the constitution to regulate interstate and foreign commerce, and that commerce includes navigation. The object of this statute, which (volume 3, p. 488) is entitled "An act regulating passenger ships and vessels," is to put into force the provision of the constitution authorizing congress to regulate commerce. The statute begins and ends with its object; and since this movement of the Black Prince was merely for the testing of her machinery, occupying four hours, without any commercial object, and the persons on board were the wife and neighbors of the owner, who, without landing, were carried to and fro, and with no object except as witnesses of the state of his vessel's machinery, the use of the vessel is not such navigation as brings it within the prohibitions and penalties of title 52, c. 2, Rev. St., which are but a re-enactment of the statute above referred to. It is rather a use to see if she is ready for navigation under the statute. It may be said that this view may open the door to the violation of the statute. The answer to this is that the true and proper way to enforce a statute is not by straining its meaning, but, by a firm application of its terms, to pro-

mote the attainment of the object with which it was enacted, carefully scrutinizing each case, including and excluding in and from its operation as it is manifest congress must have intended. Let, therefore, the libel be dismissed.