## THE VUELTABAJO.

### (District Court, S. D. Alabama. August 8, 1908.)

### No. 1,187.

1. SHIPPING—LIABILITY OF VESSEL—RIGHT OF ACTION OF PASSENGER.

A passenger on a vessel may maintain a suit in rem against her in admiralty to recover damages for a failure to furnish him with proper accomodations, but not for an assault and battery committed upon him by the master, for which his remedy is in personam only either in admiralty or at common law.

[Ed. Note.—Accomodations to passengers on vessels, see note to The Oregon, 68 C. C. A. 630.]

2. SAME—RELATION OF "PASSENGER"—EMPLOYÉ OF OWNERS CARRIED FREE.

Libelant was employed by the owners of a steamer to go with her from Mobile to Cuba, and there operate a gasoline launch under directions of the master. He was to perform no service until he reached the Cuban port, but was to receive pay from the time he started until his return, and to be furnished transportation on the vessel. *Held*, that he was not a passenger in a legal sense, nor entitled to demand accommodations as such, and could not recover in admiralty against the vessel for a failure to furnish him with such accommodations.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5218–5227; vol. 8, p. 7748.]

In Admiralty.

J. I. Clemmons and Fred Bacho, for libelant.
Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. The libelant in his libel alleges, in substance, that he was employed in the city of Mobile to go to the island of Cuba to operate while there a gasoline launch, and that he took passage to Cuba on board said steamship in company with a party of excursionists and prospectors who had hired him to go there. He alleges: That he was not permitted by the master of the vessel to go to certain parts of the vessel where the other passengers were permitted to go, but was ordered by him to go to the foredeck of said vessel, and was told that that was his place and to keep it; that he was given no sleeping apartments as a passenger, but was made to sleep in the forecastle of the vessel with her sailors or crew and with-

out proper sleeping accommodations; that when the vessel arrived at the harbor of Cienfuegos, Cuba, he took charge of said launch and operated it to and from the vessel and shore about and around said harbor as he was bidden, but returned to the vessel at night; that about three days after arriving at Cienfuegos, coming on board from shore one night, the master called him to the bridge, and a conversation ensued between them, in which a dispute arose as to whether libelant was a passenger with the rights and privileges of a passenger on the vessel or was a member of her crew and "under" the master; that in this controversy the master flew into a rage, and struck libelant violently on the face and ear, inflicting a gash and knocking him down; that he continued the assault upon him and succeeded in getting his hands and arms tied behind him and in placing him in a small room wherein he was kept in solitary confinement for five or six days with everything removed from the room except a single mattress, and was so confined until the vessel was two days out on her return trip to Mobile; and that during his imprisonment he was not furnished with reasonably sufficient food. Libelant claims that, by reason of the premises and the breach of contract of carriage as a passenger, he is entitled to demand of the said vessel, her owners and master, damages, and prays that said vessel be condemned and sold to pay the same.

Respondent, answering, says: That libelant was hired to go as a member of the crew of said vessel, but with no duty than as operator of said launch when and as she should be needed, which launch was carried on board of said vessel to be used as alleged in the libel; that libelant was to receive $1 a day besides his board on the ship; and that he signed articles upon said vessel and became and was a member of the crew. Respondent further says: That on one night while returning from the shore to the vessel libelant was insulting to the master, and on arriving at the ship he was called by the master to the bridge, and was informed that he was not a passenger, as he asserted, but a member of the crew; that libelant became very insulting and offensive and used threatening language to the master, refusing to obey his orders to go to his quarters; that libelant struck the master in the face, who thereupon threw libelant on the deck and there held him until his hands were bound by the chief officer of the ship, and the master then caused libelant to be locked up in a stateroom of the vessel, where he was confined about five days and then ordered released. Respondent further says that libelant was so confined on account of his conduct, and during such confinement was furnished an abundance of food of decent character and description and with water, and says that the master used no more violence than was necessary to meet the uncalled for assault of the libelant made upon him upon his own ship and while he had a crew aboard. Respondent says, in short, that the libelant was a servant of the ship and in no sense a passenger on her, and respondent excepts to the libel on the ground that the acts for which the libelant seeks to recover damages can be sued for in this court only in personam, and not in rem. He therefore prays to be dismissed.

From the evidence, I find the facts of this case to be substantially these: The libelant was employed by the owners of the steamship Vueltabajo to go to Cuba to operate a gasoline launch which had been provided by such owners to be taken on said steamer to Cuba to be used there in carrying the officers and members of the crew of the steamer and other persons to and from the shore, as might be required. There were aboard the steamer friends and guests of her owners, who were carried from Mobile as visitors to the island of Cuba. At the time of the engagement of libelant's services, it was agreed that they were to begin when the steamer reached her port of destination, Cienfuegos, Cuba; but compensation for such services was to commence on the day he left Mobile and to end on the day of his return there, and was to be at the rate of $1 per day. That transportation would be furnished him by the owners; their representative who made the agreement with him telling him that he would be taken down to Cuba on their vessel. That he inquired of the owner's manager of the steamer on board the steamer, on the day she left, as to where he was to be quartered, and that he was told to "see the captain about that," that "the captain would take care of that matter." Nothing was then said about his being a passenger or a member of the crew. He was told that he was subject to the orders of the master in the navigation of the launch. Libelant signed no shipping articles, and performed no services on board the steamer, and was required to perform none. It was stated that his name was on the articles, but admittedly without his consent or knowledge. It was probably put there because the steamer was not a common carrier of passengers. However, no passage was paid by libelant, and he was not furnished the accommodations or allowed the privileges of a first-class passenger. That libelant was assaulted, struck, had his arms tied behind his back, and confined in a stateroom under lock and key for several days while in the harbor of Cienfuegos and on the voyage back to Mobile is undisputed.

If the libelant was a first-class passenger on the steamer, as he claimed to be and asserted, then the failure to give him such accommodations was a marine tort, for which he might proceed in admiralty against the vessel and would be entitled to damages for such annoyance, discomfort, and public humiliation as he may have suffered. The Williamette Valley (D. C.) 71 Fed. 712. But he cannot proceed in rem against the vessel for the assault and battery committed on him, which includes the striking, the binding of his arms behind him, and the confinement in the stateroom. For these his remedy is in personam in a court of admiralty, or by suit in a common-law court. Admiralty Rule No. 16; Hughes on Admiralty, p. 187; Leathers v. Blessing, 105 U. S. 629, 26 L. Ed. 1192.

A "passenger" is one who travels in a public conveyance by virtue of a contract, express or implied, with the carrier, as a payment of fare or something accepted as an equivalent therefor. Black's Law Dict. title "Passenger"; 5 Am. & Eng. Encyc. of Law (2d Ed.) 486; Thomp. on Car. p. 26; Pa. R. Co. v. Price, 96 Pa. 267. While libelant was a passenger in the sense that he was a traveler being carried from one place to another, he was not a passenger, in the legal

sense of the term, and entitled to all the accommodations, rights, and privileges as such. He was not being carried by the steamer by any contractual relations with her as a common carrier. Moreover, when he went aboard of the vessel he understood that the master was to provide him with such quarters and accommodations as the master might designate. He was also informed that he was subject to the master's orders in the performance of the service for which he was employed, to neither of which did he object. I find therefore that libelant is not entitled to recover damages for the failure of the master to furnish him with the accommodations of a first-class passenger as claimed. I also find that he cannot recover in this proceeding in rem against the vessel for the wrongful and unjustifiable assault and battery committed on him by the master, complained of, for want of jurisdiction of this court.

My opinion on the evidence is that libelant was not a member of the crew of the steamer, but was employed by her owners to perform specific services as navigator of the launch when the steamer arrived at Cienfuegos. At all events, he was a person rightfully on the vessel. He was there for a proper purpose in itself, and was entitled to demand the exercise of ordinary care towards him on the part of the vessel, and to be exempt from cruel and improper treatment by the officers of the vessel. He at least was entitled to the consideration of a person there under the doctrine of implied invitation. But whether libelant was a member of the crew, or rightfully on the vessel as an employé of her owners, being there by their direction or permission, he would be entitled to recover for any injury cruelly, unnecessarily, and improperly inflicted on him by the master. The owners and the master would be liable by a suit in personam in a court of admiralty or by the proper action in a court of common law. The Guiding Star (D. C.) 1 Fed. 347; Spencer v. Kelley (C. C.) 32 Fed. 838; The General Rucker (D. C.) 35 Fed. 152; Leathers v. Blessing, 105 U. S. 629, 26 L. Ed. 1192.

I am therefore constrained to dismiss the libel for the want of jurisdiction of the case.