## THE ROSS CODDINGTON.*

District Court, W. D. New York.
Feb. 19, 1924.

Kellogg & Weil, of Buffalo, N. Y., for libelant.

Stanley & Gidley, of Buffalo, N. Y., for respondent.

*Decree reversed (C. C. A.) 6 F.(2d) 191.

HAZEL, District Judge.

There is little dispute as to the particulars of the accident. Libelant, an aged man of seventy-six years, who earlier in life had been a seaman, was, at the time of the accident, to perform work aboard the scow or derrick Earthquake as night watchman for the Great Lakes Dredge & Dock Company. While so employed he received severe injuries to his spine owing to a fall against the rail of the tug Ross Coddington which was transporting him from ashore, while in the act of stepping from her deck rail to the adjacent scow which was in service lightering a coal cargo from the steamer Replogle. The tug was employed under contract to carry salvage workmen from the shore to different vessels in the harbor near the breakwall which had been stranded a few days before in a severe gale. The workmen engaged in the salvage operations were taken from the different vessels and fire and boiler tenders were put aboard their respective vessels. The weather was mild and the water unruffled. After making several stops the tug came alongside the scow or derrick. Libelant had not been on the tug before the accident, in fact it was his first employment as watchman. It was growing dark and as the portside of the tug came alongside the scow, nearly touching the side, the witness Buchler, who was on the scow awaiting libelant, called out an inquiry to ascertain whether the latter was aboard, and, upon receiving an affirmative reply, extended his hand to assist him to the deck of the scow which was somewhat higher (one or two feet) than the six-inch flat rail of the tug. Taking hold of the extended hand libelant was in the act of stepping upward to the deck when the Coddington suddenly sheered away from her alongside position leaving a gap of four or five feet and causing Buchler to lose his balance, and tumble onto the tug, while libelant fell through the gap into the lake. In falling his back came against the fender-strake of the tug and he sustained the injuries in question. No line had been put out by the tug to the scow. Indeed there was no deck hand to put out a line as the crew simply comprised the master and engineer, though the tug had aboard fifteen or twenty salvage workmen at the time. Some were seated or standing in the pilot house with the captain who was at the wheel while others were about the deck.

It is contended that the tug was solely to blame for the mishap since libelant was a passenger or licensee and therefore entitled to the exercise of the utmost care; that no warning was given him, no gangplank or steps furnished for his use in leaving the tug with reasonable safety, and that it became necessary for him to attempt to leave the tug without the latter being made fast to the scow. The rule applying to passengers, however, does not apply. But that libelant, who was on the tug by express or implied invitation, was entitled to reasonably safe means for leaving at the place where he was to work cannot safely be denied. There was testimony that the workmen often left the tug at different scows or derricks without the tug being made fast. Her captain swore that whenever he drew alongside of a scow or vessel where workmen were leaving the tug or watchman getting aboard it was necessary for him to leave the pilot house to put out a mooring line, as there was no one else to do it. At the time of the accident he did not attempt to put out a line or order any one to do so, but he says that some of the workmen aboard did so. The evidence, however, satisfied me that the mooring line was not fastened to the scow until after the accident. Four witnesses who were on the tug, aside from libelant, have so testified.

In view of the fact that the Coddington did not tie up at the time in question and did not on the trip put out a mooring line to let off the watchmen of the scows and lighters, the inference was not unwarranted that libelant was expected to leave the tug as soon as she came alongside the scow and close enough to enable him to do so. In the circumstances; his attempt was not in my opinion the proximate cause of the injury. If ordinary care and precaution had been exercised by the tug to hold fast and steady, or if a deck hand was preparing to put out a mooring line, no fault could legally be attributed to her. In the usual course of events the presence of a deck hand or other person charged with the duty of putting out lines would no doubt have restrained libelant from leaving or stepping on the scow before he was admonished that it was safe for him to do so. It was the omission to make fast or offer to make fast or give libelant warning of the danger in stepping off before the tug could make fast that was primary cause of the accident. It does not appear that the Great Lakes Dredge & Dock Company had notice of this manner of getting off the tug or that no deck hand was aboard. It might naturally and reasonably have been anticipated that the tug unfastened would suddenly swerve or lurch from her position. It was her duty to guard against such injury to those who had been invited for a consideration paid by the employer of the workmen to come aboard

for transportation. Libelant was not guilty of contributory negligence since he presumably had observed that at prior stopping places a mooring line was not put out, and furthermore that apparently no one was charged with the responsibility of doing so, the master being at the wheel, and the engineer at his post.

The fault of the Coddington cannot be excused on the ground, as contended, that she was licensed as a motorboat and required to have but one officer. She was a powerful steel tug 64 feet long and 15.6 beam, and in the exercise of proper care should have been adequately equipped.

Nor in my opinion was the cause of action extinguished by the release given by libelant to the Great Lakes Dredge & Dock Company which, through an insurance company, paid $500. The navigation and management of the Coddington at no time was under the control of the Great Lakes Dredge & Dock Company. Her engagement to carry the workmen, according to the answer, was through Captain Lynn acting for the London Salvage Company and the scow leased by the latter. The libelant, when he executed the release in question, was not informed and did not know that it would release any right of action he might have against the tug. It was not in his contemplation that he was releasing the tug from liability, and indeed, the language of the release does not indicate that any of the parties thereto had such an effect in mind. He believed $500 was paid him by his employer as compensation for wages—a requirement of the state law—while he was laid up in the Emergency Hospital. Nothing was said to him at any time that the amount would release the tug for the personal injuries sustained. In the circumstances of this case a court of equity will be slow to hold that a release becomes operative as to a matter of liability of which the releasing party was in ignorance and which, in fairly interpreting the document, was not in contemplation of the parties when it was made. Blair v. Chicago & A. R. Co., 89 Mo. 392, 1 S. W. 350. Even though it be assumed, as held in Maryland D. & C. Co. v. State of Maryland (C. C. A.) 262 F. 11, that a joint liability existed on the part of the tug and the Great Lakes Dredge & Dock Company and the libelant, I nevertheless am of the opinion that the release is not binding upon libelant in the enforcement of his right of action against the Coddington.

It is shown that libelant was in the Emergency Hospital for a period of twelve weeks and later was required to go to the Marine Hospital where his treatment of electric baths, massage, etc., is continued. The injuries consisted of arthritis in the sacroiliac joint and in the lower lumbar vertebra of the spine—a painful injury. He has been unable to perform any work since receiving the injury and is still disabled, though with proper treatment I am inclined to think that he will be able to do work of the lighter kind. He has an expectancy of life of 6.58 years, and was earning at the rate of $30 per week at the time of receiving the injury, though it is fair to infer that he has been at work in recent years only during the season of navigation. He is entitled to recover from the tug Ross Coddington his damages caused by her fault which may fairly be estimated at $4,000, for which sum and costs let a decree be entered.