**CARLSEN et al. v. A. PALADINI, Inc.**

(Circuit Court of Appeals, Ninth Circuit. April 27, 1925. Rehearing Denied May 25, 1925.)

No. 4452.

1. **Shipping ⬤166(4)—Evidence held to sustain finding that owner of motorship was not guilty of negligent failure to inspect bridle.**

Evidence *held* to sustain finding that injuries to persons on motorboat caused by defective bridle were not due to negligence on part of owner to properly inspect bridle.

2. **Shipping ⬤166(1)—Res ipsa loquitur doctrine held inapplicable to injuries sustained on breaking of bridle when motorship was towing barge.**

Doctrine of res ipsa loquitur *held* not applicable to injuries sustained by persons on board motorship on breaking of bridle while ship was towing barge.

3. **Shipping ⬤207 — Persons on board ship held not "passengers" so as to deprive charterer of protection of Limited Liability Law.**

Where charterer of motorship, who agreed with contractor to deliver materials and supplies to place where wharf was being constructed and to transport all equipment back to certain place, permitted contractor's employees to accompany ship during transportation of such equipment without exacting or expecting pay, the charterer, on injury to such employees, was entitled to protection of Limited Liability Law (Comp. St. §§ 8020–8027), since such employees were not passengers within Rev. St. § 4493 (Comp. St. § 8269).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Passenger.]

Appeal from the Southern Division of the Northern District of California; John S. Partridge, Judge.

Petition for limitation of liability by A. Paladini, Inc., against William Carlsen and others, claimants of the motorship Three Sisters. Petition sustained, and claimants appeal. Affirmed.

Heidelberg & Murasky and Joseph J. McShane, all of San Francisco, Cal., for appellants Carlsen and Sauder.

Redman & Alexander and Bell & Simmons, all of San Francisco, Cal., for appellant Ætna Life Ins. Co.

Homer Lingenfelter and Ira S. Lillick, both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. This appeal is taken from the decree of the court below, sustaining the appellee's petition for limitation of liability for the personal injuries sustained by the appellants Carlsen and Sauder while on the motorboat Three Sisters to the value thereof. Said appellants had filed in the superior court of the state of California actions at law to recover damages for the injuries. Those actions were stayed, and they filed their claims and answers to the petition in the limitation proceeding.

The facts were substantially these: The Healey-Tibbitts Construction Company, a corporation, had a contract with the appellee, the owner of the Three Sisters, for the construction of a wharf for the appellee at Point Reyes. The appellants, Carlsen and Sauder, were employees of the Healey-Tibbitts Company in the construction of the wharf. The contract required the appellee to deliver at Point Reyes all materials and equipment necessary to complete the wharf and to deliver supplies for the men on the wharf three times a week, and upon the completion of the wharf to transport all equipment back to San Francisco. The appellee chartered from the owners thereof a barge, assuming by the charter party all risks arising from the appellee's use thereof. On the completion of the wharf on June 8, 1923, the appellee started to tow the barge with a pile driver and piles on board from Point Reyes to San Francisco. The barge was made fast to the Three Sisters by a seven-inch Manila line, one end of which was attached to the mast of that vessel, the other to a thimble and swivel, which were connected to a bridle made of steel cable about 70 feet in length, the ends of which were made fast to towing bitts on the forward port and starboard corners of the barge, respectively. The em-

ployees of the construction company went aboard the Three Sisters. Four of them sat down in the stern to play cards, and two of them were severely injured when, upon the vessel encountering ground swells, the two steel cables parted and the hawser attached to the Three Sisters swung around and struck them. The court below upon the evidence held that the bridle had been subjected to proper inspection, that the accident was either inevitable or it was due to the force of the ground swells. The appellants in their answer to the petition alleged the specific act of negligence of the appellee to have been the use of a rotten, unsound, and defective towline and bridle. Upon that issue the court below found against them. There was no evidence at all that the towline was defective, but it was contended that it was too short. The testimony as to its length was conflicting. None of it was based on measurement, but it all consisted of estimates of witnesses on the tug as to the distance that separated the tug from the tow after the commencement of the voyage. The estimates varied from 150 feet to 600 feet. The court below was not convinced, nor are we from anything that appears in the record, that deficiency in the length of the hawser contributed to the accident.

[1] It is urged that the appellee was negligent in that the bridle was defective. As to the condition of the bridle, one of the workmen who were returning upon the boat testified that a month before the day of the accident he had noticed the bridle and had seen that it was rusty, and the swivel was so rusty that it would not turn. Another of the workmen testified that shortly before the accident he noticed the condition of the bridle and found that it looked a little rusty. "That is all I noticed. I did not pay much attention to it." He went on to say that there were a few strands broken around where it was made fast to the shackle. On behalf of the appellee, the testimony of its port engineer was that he inspected the towline and bridle when the Three Sisters started out from San Francisco to Point Reyes to bring back the barge, and that the bridle, which was a seven-eighth inch, steel, galvanized cable, was in good condition, that the swivel was turning freely and that it was turning in the shackle. The prior port engineer of the appellee testified that just before the barge and pile driver were towed to Point Reyes he inspected the bridle, which he said was a seven-eighth inch cable and galvanized, and that it looked all right, and that the swivel was turning, and that the bridle was

not rusty at all. On this conflicting testimony the trial court observed: "The evidence in regard to condition of the bridle and the length of the hawser is conflicting. I am satisfied, however, that the bridle was subjected to a proper inspection." We see no ground for disturbing the conclusion of the trial court, based as it was upon the testimony of witnesses whose bearing and demeanor he had the opportunity to observe. The appellants point to the failure of the appellee to preserve the pieces of the broken bridle so as to produce them in evidence. Such failure to preserve evidence has often been held to justify the inference that it would have proven defective equipment. But here the effect of the failure is greatly lessened by the fact that the actions by the injured men were not begun until a year after the accident, and that the appellee, according to its president's testimony, which is not disputed, had no intimation until six or eight months after the accident that a claim for damages would be made against his company. His testimony is not discredited by the fact that he had denied responsibility for the care of the injured men.

[2] The appellants invoke the doctrine of res ipsa loquitur, but we think it is inapplicable. From the fact that the bridle parted it does not follow that the appellee was negligent. If in fact the bridle was defective, there is absence of evidence of negligence on the part of the appellee or proof that it had knowledge of the defect or failed properly to inspect the bridle. The appellants belittle the testimony which tends to indicate that an unusual strain was placed upon the cable. The court below was of the opinion that the cause of the accident was the heavy ground swells encountered by tug and tow. The captain testified to meeting the ground swells and said, "The further we got, the bigger the ground swells got"; that when she was going ahead part of the time the line would be in the water and sometimes it would jump right out; that every once in a while he would take a look toward the barge and "give her the once over when she bounced around." He accounted for the accident on the ground that the barge was swinging from one side to the other and going with the sea, and sometimes the tug would go ahead and jerk the line when it got between the seas and running with the sea. Capt. Mohr testifying as an expert, answering the question, "Under what circumstances does reasonably proper and safe tow equipment break?" said, "By cross-seas or by tow or launch or a tug being in different positions,

such as the barge being up in one sea and the tug being down in the other."

[3] It is contended that the petitioner is not entitled to the protection of the Limited Liability Law (Comp. St. §§ 8020–8027) for the reason that it used the Three Sisters to carry passengers without having her inspected or obtaining a certificate of inspection, citing section 4493, Rev. Stats. (Comp. St. § 8269), which defines the liability of masters and owners for damages sustained by passengers. It is true that the petitioner had no inspection certificate. The Three Sisters was not a passenger carrying vessel. "A passenger in the legal sense of the term is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier as to payment of fare or that which is accepted as an equivalent therefor." 5 A. & E. Encyc. of Law, 486. The Three Sisters was in no sense a public conveyance. The appellee had no contract with the appellants or the men associated with them, either express or implied, as to payment of fare or an equivalent therefor. It did not hold the vessel out to be a common carrier. Her business was that of towing upon occasional engagements. The appellee had a contract with the construction company to deliver materials at Point Reyes and supplies there three times a week and to transport all equipment back to San Francisco. It was not under contract to carry the employees of the construction company. The captain testified that the men wanted to go down on the Three Sisters, and that he answered, "All right." They did not pay, nor did they expect to pay, any fare for transportation.

The case is not dissimilar to The Downer (D. C.) 171 F. 571, where a carpenter was injured while being taken to New York on a vessel after the completion of his work. In The Vueltabajo (D. C.) 163 F. 594, the libelant was employed by the owners of a steamship to go to Cuba, there to operate a gasoline launch for the steamship, his services to begin on arrival in Cuba, transportation to be furnished by the owners. The court said that while the libelant was a passenger in the sense that he was a traveler, he was not a passenger in the legal sense of the term. In United States v. Guess (D. C.) 48 F. 587, where the wife and neighbors of a tug owner went upon the tug during a trial trip, it was held that they were not passengers within the meaning of the statute requiring passenger boats to be inspected and licensed. The appellants rely on The Steamboat New World, 16 How. 469, 14 L. Ed. 1019, where

it was held that a steamboat man carried gratuitously on a vessel engaged in business as a common carrier was a passenger in view of the established custom of the masters of steamboats to permit steamboat men to go to and from place to place free of charge. The court reasoned that although no fare was received, there was a compensation accruing to the vessel from the custom, in that it rendered it easier for the vessel to obtain the services of steamboat men to supply its needs. No such reasoning applies to the present case. In principle, Shoemaker v. Kingsbury, 12 Wall. 369, 20 L. Ed. 432, is applicable. It was there held that when contractors for building a railroad running a construction train consented to take a passenger for hire on their train, they were private carriers for hire and were not required to prove that their servants in charge of the train were competent or skillful or qualified for the business in which they were engaged.

We are not convinced that the court below was in error in holding that the accident was not caused by the design or the negligence of the appellee and did not occur with its privity or knowledge.

The decree is affirmed.