Paul RUTLEDGE, Sr.

v.

A & P BOAT RENTALS, INC.

Civ. A. No. 85–1487.

United States District Court,
W.D. Louisiana,
Alexandria Division.

April 28, 1986.

John E. Morton, Fuhrer, Flournoy & Hunter, Alexandria, La., for plaintiff.

Frederick L. Cappel, Raggio, Cappel, Chozen & Berniard, Lake Charles, La., for intervenor.

William B. Gibbens III and John W. Ellinghausen, Lee & Gibbens, New Orleans, La., for defendant.

### RULING

LITTLE, District Judge.

Paul Rutledge, AKA Paul Rutledge, Sr., while aboard the defendant's vessel, the M/V PARAKEET, was allegedly injured while being transported across the Gulf of Mexico to a fixed offshore drilling platform. Rutledge sued the vessel owner, A & P Boat Rentals, Inc., under Fed.R.Civ.P. 9(h) claiming maritime negligence, unseaworthiness and Jones Act (46 U.S.C. § 688) negligence. A & P now moves for partial summary judgment on the grounds that the unseaworthiness and Jones Act claims

should be dismissed as a matter of law. Finding that defendant's legal position is correct, the motion is GRANTED.

### I. FACTS

Paul Rutledge was employed by World Hospitality, Inc. as a catering hand. Under instructions from his employer he traveled to Venice, Louisiana to meet the offshore supply vessel, M/V PARAKEET. Once there, he was instructed that the vessel would transport him to a drilling platform owned by Conoco, Inc. The PARAKEET was owned and operated by A & P and under time charter to Conoco. Shortly after midnight Rutledge arrived in Venice and boarded the vessel on which he slept until dawn. Upon awaking, Rutledge was met with complaints from the crew that they had not had a hot meal in several days. In reaction, Rutledge took command of the galley and not only prepared for all a hot breakfast of bacon, eggs and biscuits but also washed the pots, pans and dishes. He was not compensated for his worthy performance. The vessel departed the Conoco dock at mid-morning. Before arriving at the destination, plaintiff was allegedly injured.

### II. PLAINTIFF AS SEAMAN

Defendant's first argument is that the plaintiff was not a Jones Act seaman while aboard the PARAKEET. This circuit's test for seaman status is now found in two cases: *Offshore Company v. Robison*, 266 F.2d 769 (5th Cir.1959) and *Barrett v. Chevron U.S.A., Inc.*, 781 F.2d 1067 (5th Cir.1986) (en banc). *Robison* requires the satisfaction of two conditions: (1) The individual must be permanently assigned to a vessel or perform a substantial part of his work on a vessel or vessels; and (2) the capacity in which he was employed, or the duties he was required to perform, contributed to the function or mission of the vessel. 266 F.2d at 779. Once this has been done, *Barrett* dictates that a court analyze two further points: (1) To determine whether a claimant satisfies the "substantial work" prong of *Robison*, it is neces-

sary to consider *all* circumstances of the claimant's employment history; and (2) if the claimant receives a new work assignment before his accident during which either his essential duties or his work location is permanently changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new job. 781 F.2d at 1075–76.

■ The Fifth Circuit has made it clear that the relationship between the plaintiff and a vessel creating seaman status must be substantial in point of time and work and not merely sporadic. *Barrett, supra; Dove v. Belcher Oil Co.,* 686 F.2d 329, 333 (5th Cir.1982); *Roberts v. Williams-McWilliams Co.,* 648 F.2d 255, 261–62 (5th Cir. 1981); *Braniff v. Jackson Ave.-Gretna Ferry, Inc.,* 280 F.2d 523, 528 (5th Cir. 1960). In this case, it is manifest that the single occurrence of Rutledge cooking breakfast aboard the vessel does not meet the "substantiality" prong of the *Robison-Barrett* analysis. The Court finds as a matter of law that Rutledge was not a seaman.

### III.  PLAINTIFF AS PASSENGER

Defendant's second argument is that the plaintiff is a passenger and under the general maritime law no warranty of seaworthiness is owed to a mere passenger aboard ship. Accordingly, it is contended that the only standard of care owed by the vessel owner to a passenger is one of reasonable care under the circumstances.

■ Technically, one who obtains passage from another may not be a de jure passenger. This conclusion is reached when one examines the classic definition of passenger.

A "passenger" is one who travels in a public conveyance by virtue of a contract with the carrier, express or implied, paying fare or something accepted as an equivalent therefor.

*The Vueltabajo,* 163 F. 594, 596 (S.D.Ala. 1908). Those on board a vessel in a capacity of other than seaman could be passen-gers, pirates, visitors, invitees, trespassers, licensees or permittees. Each status is distinct. *See* M. Norris, *The Law of Maritime Personal Injuries,* § 31 at 62 (3d ed. 1975) (cited as *Norris* ). The duty of care owed to these different types of travelers has been more uniform in some circuits than in others. A brief survey is appropriate.

#### A.  *Passengers*

As the previously cited definition suggests, the traditional basis for a passenger-carrier relationship has been the existence of a contract of carriage between a fare-paying traveler and a person-transporting shipowner, or their respective agents. *The City of Panama v. Phelps,* 101 U.S. (11 Otto) 453, 462–63, 25 L.Ed. 1061, 1065 (1880). Thus, repatriated seamen whose passages were paid by their employers have been held to be passengers as have slaves transported during the time when they were regarded as property rather than persons. *See The European,* 120 F. 776, 780–81 (5th Cir.1903); *Boyce v. Anderson,* 2 Peters 150, 155, 7 L.Ed. 379, 380 (1829) and *Norris,* § 30 at 60.

A water carrier has been held to a very high degree of care when transporting passengers. *The City of Panama,* 101 U.S. at 462, 25 L.Ed. at 1064; *The Steamboat New World,* 57 U.S. at 474, 14 L.Ed. at 1021. This degree of care has been variously described as "the greatest possible care"; "very high indeed"; "a high degree of care"; "the highest degree of care"; "utmost care"; and "extraordinary vigilance and the highest skill to secure the safe conveyance of the passengers." *Norris,* § 36 at 68–69 and cases cited therein. Gratuitous carriages have been held to provide travelers with the same rights and amenities as those enjoyed by fare-paying customers. *The Steamboat New World v. King,* 57 U.S. (16 How.) 469, 473–74, 14 L.Ed. 1019, 1021 (1853); *Rowe v. Brooks,* 329 F.2d 35, 42–44 (4th Cir.1964).

■ In this circuit, several decisions have adopted the high degree of care standard. *See In re Dearborn Marine Serv.,*

499 F.2d 263, 278 (5th Cir.1974) (master not exonerated from duty to moor vessel in safe location by use of reasonable diligence); *McCormick Shipping Corp. v. Stratt*, 322 F.2d 649 (5th Cir.1963); *Stanga v. McCormick Shipping Corp.*, 268 F.2d 544, 551 (5th Cir.1959); *Peninsular & Occidental S.S. Co. v. NLRB*, 98 F.2d 411, 414 (5th Cir.1938); *Porche v. Gulf Mississippi Marine Corp.*, 390 F.Supp. 624, 632 (E.D. La.1975) (all applying high degree of care). Thus, even though the burden of proof is on the plaintiff, under these standards, evidence of the "smallest negligence" on the part of the carrier would render the carrier liable for damages. *The City of Panama*, 101 U.S. at 462, 25 L.Ed. at 1064 (1879); *Norris*, § 36 at 69.

### B. *Visitors*

Bon voyage celebrations are common occurrences aboard soon to depart ships. *Norris*, § 52 at 93–94. It has been accepted that many other types of permittees will come aboard a vessel, whether in connection with cargo, inspections, vessel management or visitation of members of the crew. *Id.* at 95.

■ Visitor status as opposed to passenger status is found in the following cases: *Leathers v. Blessing*, 105 U.S. (15 Otto) 626, 629–30, 26 L.Ed. 1192, 1193–94 (1881) (consignee aboard vessel to check on goods); *Dennis v. Central Gulf Steamship Corp.*, 453 F.2d 137 (5th Cir.1972) (marine surveyor on board for vessel inspection); *Carlsen v. Paladini, Inc.*, 5 F.2d 387 (9th Cir.1925) (non-paying employees of wharfing contractor being transported back to port from job site); *The City of Seattle*, 150 F. 537 (9th Cir.1906) (minister on board to visit passenger); *Gulisano v. American Export Lines, Inc.*, 212 F.Supp. 809 (S.D.N.Y.1962) (visitor of passenger on crowded gangway); *The Ross Coddington*, 40 F.2d 280 (W.D.N.Y.1924), *rev'd. on other grounds*, 6 F.2d 191 (2d Cir.1925) (night watchman transported to job assignment on scow); *The Vueltabajo*, 163 Fed. 594 (S.D.Ala.1908) (employee of shipowner being transported to first job assignment in

port of Cuba); *United States v. Guess*, 48 Fed. 587 (E.D.La.1891) (wife and neighbors of vessel owner on board for a trial run). In any event, whether friend or relative, licensee or invitee, it has been held that all visitors are owed a duty of reasonable care by the shipowner. *Id.* If injured by failure to exercise properly that care, those visitors are entitled to recover damages by bringing an action in admiralty. *Leathers, supra.* Unlike the burden of proof in a passenger case, an injured visitor must prove negligence on the part of the vessel owner by a preponderance of the evidence. *Id.*

### C. *Blurring the Distinction*

In 1959 the Supreme Court was called upon to determine the duty owed a visitor aboard ship who suffered injury caused by the negligently maintained condition of the ship. That determination was made in *Kermerac v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). The facts were as follows: The S.S. OREGON was berthed at a New York City pier. Kermerac had been given permission to board the vessel for the purpose of making a social call on one of its crewmen. As he was leaving the vessel he fell and was injured due to the faulty way in which a canvas runner had been tacked to the stairway. Kermerac brought suit in federal court in New York on diversity jurisdiction and sought recovery on the grounds of unseaworthiness and negligence.

The trial judge allowed the negligence theory to go to the jury under New York state law and dismissed the unseaworthiness claim. The jury verdict was for the plaintiff. The trial court then set aside the verdict and dismissed the case. The court of appeals affirmed the dismissal.

In reversing the lower courts and directing that the judgment be reinstated, the Supreme Court held (1) the trial court was correct in not extending the warranty of seaworthiness to a visitor; (2) since the injury occurred in navigable waters maritime, not state law, applied; (3) the licen-

see-invitee distinctions for visitors found in common law do not apply in maritime cases. 358 U.S. at 629–30, 79 S.Ct. at 409–10, 3 L.Ed.2d at 553–54. As to this the Court stated:

> We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case.

*Id.* at 632, 79 S.Ct. at 410, 3 L.Ed.2d at 555. This statement has since been reaffirmed in *Federal Marine Terminals, Inc. v. Burnside Shipping Co.*, 394 U.S. 404, 415, 89 S.Ct. 1144, 22 L.Ed.2d 371, 380 (1969).

On the strength of *Kermerac*, defendant argues that passengers are owned a duty of reasonable care under the circumstances. Presumably the defendant contends that the phrase "all who are on board for purposes not inimical [to the vessel owner's interests]" used by the Supreme Court encompasses passengers. In other words, the *Kermerac* holding is not limited to visitors.

Two noted commentators on admiralty law apparently limit *Kermerac* to cases involving visitors. *See* Norris, § 52 at 95–96; H. Baer, *Admiralty Law of the Supreme Court*, § 2–1 at 103 (3d ed. 1979). The courts, however, have not been so inclined. Both the Second and the Fifth Circuits have adopted the *Kermerac* rule for passengers in modern times. *E.g. Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir.1983); *Dove v. Belcher Oil Co., supra; Roberts v. Williams-McWilliams Co., supra; Tittle v. Aldacosta*, 544 F.2d 752, 755 (5th Cir.1977); *Gibboney v. Wright*, 517 F.2d 1054, 1059 (5th Cir.1975); *Tullis v. Fidelity and Casualty Co. of New York*, 397 F.2d 22, 23–24 (5th Cir. 1968). By intentionally adopting the *Kermerac* rule, these courts have implicitly eliminated the traditional distinction between passengers and visitors. *Compare Rainey, supra* with *Tullis, supra.* Therefore, based on the impressive modern authorities this Court will apply the reasonable care standard in this case. There is, however, at least one other good reason for applying that standard.

## IV. FEDERAL STATUTES

■ In the exercise of its conceded jurisdiction over matters of the sea, Congress has enacted elaborate provisions to enhance the safety and protection of passengers on vessels. For example, passenger carrying vessels must be licensed and regularly inspected by federal authorities. 46 U.S.C. §§ 3101 *et seq.* and 7101 *et seq.* No vessel carrying passengers may leave port without a full compliment of licensed officers and crews, including watchmen sufficient in number and competent to address exigencies as are likely to happen upon the contemplated voyage. 46 U.S.C. §§ 8101, *et seq.* The duty to a vessel passenger is the subject of regulations issued by the Coast Guard. The definition of a passenger in these regulations has been useful to the courts when the status of a claimant is contested. *See In re Dearborn Marine Serv.*, 499 F.2d at 279–84; *Carlsen v. Paladini, supra; United States v. Guess*, 48 F. at 588.

Pursuant to 46 U.S.C. § 2101(21)(C)(viii) a:

> "passenger"—on an offshore supply vessel, means an individual carried on the vessel except—
> (viii) a person employed in a phase of exploration, exploitation, or production of offshore mineral or energy resources served by the vessel.

Applying this definition to the present case, it appears as though Rutledge is not a "passenger" under the statute since he is employed in a phase of offshore production. The exact limits of the word "phase" need not be addressed. It is sufficient to say that plaintiff fits the exception to the general definition.

## V. CONCLUSION

Accordingly, in the interest of uniformity, the Court finds that plaintiff was neither a seaman nor a "passenger" in either the historical or statutory sense but was a

"visitor". His Jones Act and unseaworthiness claims shall be dismissed.

■ Plaintiff is entitled to proceed in this suit under the general maritime law of negligence. At trial, the standard against which any negligence must be measured, shall be the standard of reasonable care under the circumstances.

The degree of care warranted in this case will depend on the evidence submitted at trial. The parties are advised that they should be prepared to offer evidence as to the proper degree of care to be applied in this matter and substantiate those conclusions with appropriate citations.

MOTION GRANTED.