Margaret H. LEROY et al., Appellants,

v.

TEXAS GULF SULPHUR COMPANY, Appellee.

No. 13086.

Court of Civil Appeals of Texas.

Galveston.

April 18, 1957.

Rehearing Denied Feb. 6, 1958.

Phillip B. Goode, College Station, Arthur Stewart, John M. Barron, and Coulter Hoppess, Bryan, Eugene N. Catlett, Houston, for appellants.

Sam W. Cruse and W. N. Arnold, Jr., Houston, and Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, of counsel, for appellee.

HAMBLEN, Chief Justice.

By separate actions Mrs. Margaret H. Leroy and others and Sybil Johnson Haltom and others brought suit for damages arising out of the death of Royce H. Leroy and T. H. Haltom, which occurred on or about April 4, 1953, on the Neches River near Beaumont, Texas. The suits were brought under Art. 4671, Vernon's Ann.Texas St., against Texas Gulf Sulphur Company and Alex H. McClelland as defendants. The suits against Alex H. McClelland were later dismissed. The two causes against Texas Gulf Sulphur Company were consolidated for trial and were tried before the District Court of Harris County, Texas, sitting with a jury. At the conclusion of the evidence, the trial court sustained the defendants' motion for an instructed verdict and judgment was entered that appellants take nothing.

The factual background of the litigation which is essentially undisputed is as follows:

Royce H. Leroy and T. H. Haltom were scientists employed by Texas A & M Research Foundation. The Foundation some two years prior to the accident in question entered into a contract with Texas· Gulf

Sulphur Company to perform certain chemical tests of the water in the Neches River for a distance of several miles above and below the plant of the appellee, Texas Gulf Sulphur Company. To perform their contract Texas A & M Research Foundation chartered a 23 foot Chris-Craft inboard motorboat from Alex H. McClelland. The chemical tests were usually made on weekends at biweekly intervals. The usual procedure prior to making such a test was for Texas A & M Research Foundation to advise Texas Gulf Sulphur Company as to the time of arrival of the two chemists and Texas Gulf Sulphur Company would make one of its employees available to operate the Chris-Craft motorboat. When the motorboat was not employed in making such tests it was moored by Texas A & M Research Foundation at Alex H. McClelland's shipyard and was never under the control of Texas Gulf Sulphur Company. All arrangements for renting or chartering the boat were made by Texas A & M Research Foundation and all expenses in connection with its operation were paid by the Foundation. During the two year period during which such tests had been performed prior to the accident in question, at least four different employees of Texas Gulf Sulphur Company had from time to time been made available to Texas A & M Research Foundation for the purpose of operating the motorboat. On the day on which the accident in question occurred, the motorboat was being operated by Elmo Daunie, a general employee of Texas Gulf Sulphur Company who had also so operated the motorboat on four or five previous occasions.

On the morning of April 4, 1953, Royce H. Leroy and T. H. Haltom, together with Elmo Daunie, boarded the Chris-Craft motorboat at McClelland's shipyard. Around 11:30 on that morning the boat came into waters described as the Stanolind Slip and at that time it was observed that the engine in the vessel was not operating properly. Leroy, Haltom, and Daunie, after eating lunch, reboarded the vessel and Leroy instructed Daunie to proceed to the next station where a test of the water was to be made. As the boat left the dock the engine continued to operate improperly, and Leroy asked someone on the dock to call Alex McClelland, the owner of the boat and secure instructions as to how to correct the engine trouble. Alex McClelland by telephone, after hearing the nature of the difficulty, advised that it sounded to him like the engine was running with the choke closed. This information was communicated to Daunie on the boat, who responded that the choke was not closed. This conversation took place about 1 o'clock on April 4. Later that day, around 4 or 4:30 p. m., the vessel was found burned to the water line with no one aboard. During the next 24 to 48 hours the bodies of Daunie, Leroy and Haltom were recovered from the Neches River.

The appellants attack the judgment of the trial court in 13 points of error which, because of their length, cannot be set out in this opinion. It is sufficient to state that the appellants in their trial pleadings alleged and on this appeal assert that they have established liability or, at least, have raised an issue of fact for jury determination of liability on the part of Texas Gulf Sulphur Company, first under the doctrine of res ipsa loquitur, second under the doctrine of negligent entrustment, and third upon the theory that there is evidence of negligence on the part of Elmo Daunie proximately causing the death of Leroy and Haltom. We are unable to see merit in any of the contentions made by the appellants, and overrule their points of error by which such contentions are presented.

This case is not one to which the doctrine of res ipsa loquitur has application. The only proof in the record is that a fire or explosion occurred which burned the boat to the water line. There is no evidence as to what caused the fire. The boat was not owned by appellee and appellee had no control over the boat. The boat was owned by Alex McClelland and chartered by him to Texas A & M Research Foundation, the employer of Leroy and Haltom.

Appellee at no time had the right to the possession or control of the boat. At the time of the fire or explosion Leroy and Haltom as employees of Texas A & M Research Foundation were in charge of the boat under the written agreement that their employer had with Alex McClelland. The foregoing undisputed facts place this case squarely within the rule stated by the Supreme Court of Texas in Texas & P. Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3, 4. That case was one brought for the death of a servant in a coal mine, caused by the derailment of the defendant's motor car. The Supreme Court use's the following language:

"The derailment of the car, unexplained, is a fact which by its very nature may be admitted to suggest something amiss, a want of proper precaution somewhere. But what was the cause of the derailment? Until we can answer that question, we think it must be admitted that it is not shown by the evidence that the particular thing which caused this injury was in the exclusive management of the defendant. If everything that could reasonably be assigned as the cause of the derailment had been wholly under the control of servants of defendant other than the deceased himself, it might be inferred that the cause, whatever it was, consisted in some negligent act or omission of theirs. But we have a track, with its switches, and a motor car, defects in, or negligent management of, any of which might have brought about that which happened. The deceased himself had a hand in the management of the switches, and also in controlling the movements of the car, in so far as it depended on the giving of signals. Negligence is not to be imputed either to him or to the defendant's other servants without proof; and a state of facts in which the cause of the accident cannot be found does not warrant a conclusion that one, rather than the other, produced it. We cannot presume in favor of one and against the other. Evidence must be brought by a plaintiff, having the burden of proof, sufficient to justify an inference of negligence on the part of the defendant; and none such can be drawn from an occurrence which, while indicating negligence somewhere, is as consistent with the hypothesis that it was his own, or that of one in whose right he sues, as that it was that of the other party."

It seems quite apparent to this Court that the facts in this present case fit squarely within the quoted words from the Supreme Court's opinion. No one knows what Leroy or Haltom or Daunie did from the time they left the Stanolind Dock until the fire or explosion occurred. Leroy and Haltom were in charge of the boat and the maintenance of the boat was clearly the obligation of Alex McClelland. If there were any mechanical defects in the boat, same cannot be charged to appellee who had neither the duty nor the right to maintain or control the boat. See also Alexander v. Cheek, Tex.Civ.App., 241 S.W.2d 950, and also Cruse v. Sabine Transportation Co., Inc., 5 Cir., 88 F.2d 298.

■ Appellants' contention that liability on the part of the appellee is sustainable under the doctrine of negligent entrustment rests entirely upon the proposition that Elmo Daunie, the employee of appellee furnished to Texas A & M Research Foundation to operate the boat, did not have an operator's license. The statute setting forth the license requirements for the operation of motor vessels on navigable waters appears in Title 46, Sec. 526, U.S.C.A. This statute requires a license only where such motorboat is carrying passengers for hire. It is admitted that Daunie had no license, but it is quite clear that he was not carrying passengers for hire and therefore, under the applicable statute, was not required to have a license. The word "passenger" has been defined in the case of The Downer, D.C., 171 F. 571, 573, in the following language: " 'A passenger, in the legal sense of the term, is one who travels

in some public conveyance by virtue of a contract, express or implied, with the carrier, as to payment of fare, or that which is accepted as an equivalent therefor.' "

In the present case Texas A & M Research Foundation chartered the boat, paid the charter hire and neither Texas A & M Research Foundation nor Leroy nor Haltom ever paid any fare to Texas Gulf Sulphur Company or to its general employee, Elmo Daunie; nor did they pay any equivalent of a fare. In this connection see also Carlsen v. A. Paladini, Inc., 9 Cir., 5 F.2d 387, and The Vueltabajo, D.C., 163 F. 594.

There is no evidence in the record other than the admitted fact that Daunie had no license, which indicates that Daunie was an incompetent operator of the boat. On the other hand, the evidence shows that Daunie had operated the boat on previous occasions and all of the evidence which bears upon his competency indicates that he was a competent operator.

■ In so far as proof of any negligent act on the part of Daunie is concerned, appellants rely solely upon the testimony of a witness, Herbert A. Plumer, who was a part-time marine surveyor. This witness viewed the boat over a month after the accident occurred. He expressed the opinion that the vessel burned by explosion of a gasoline flash fire. Evidence from other witnesses establishes that, of the three deceased occupants of the boat, Daunie suffered more severe burns than the other two, from which fact Plumer testified to the conclusion that Daunie was working in the bilges of the boat or around the engine and created a spark that caused an explosion. This testimony is manifestly merely surmise or suspicion on the part of the witness and not fact. On cross-examination the witness admits that the fire or explosion could as readily have been caused by some other means and that he did not know what had taken place. This Court has held and it appears to be well established that where the facts and circumstances upon which the plaintiff relies to establish negligence and proximate cause are equally consistent with the nonexistence of negligence proximately causing the injury, the plaintiff has failed to meet the burden imposed upon him. Perren v. Baker Hotel of Dallas, Tex.Civ.App., 228 S.W.2d 311; General Accident Fire & Life Assurance Corp. v. Perry, Tex.Civ.App., 264 S.W.2d 198; Phillips Petroleum Company v. West, Tex.Civ.App., 284 S.W.2d 196.

■■ It is equally well established that inference may not rest upon inference, nor presumption upon presumption. 17 Tex. Jur. 247, and General Accident Fire & Life Assurance Corp. v. Perry, supra. Reviewing the record as a whole, it appears to this Court that the only fact in evidence is that the motorboat upon which Leroy and Haltom were riding burned. Any opinion as to the cause of the fire clearly rests purely upon speculation and surmise or upon inference.

By counter-point appellee asserts that the judgment of the trial court is in any event correct because at the time of the fire Daunie, though a general employee of appellee, was a loaned servant of Texas A & M Research Foundation and as such was under the direction and control of Leroy and Haltom only. While we feel that there is merit in appellee's stated counter-point, we do not think it is essential to the determination of this appeal.

It is ordered that the judgment of the trial court be affirmed, GANNON, J., not sitting.

Appellants' motion for rehearing was submitted and orally argued by all parties on December 12, 1957 before Chief Justice BELL and two special justices appointed by the Governor to hear and dispose of such motion to wit: Special Associate Justices DWIGHT H. AUSTIN and FRANK P. GRANBERRY. (The appointment of the two special associate justices became necessary because Associate Justices WOODRUFF and WERLEIN were disqualified.)